track for 850 feet north, and at 10 feet there was clear vision for 1,200 feet north. There was testimony that the gravel at the crossing was six inches below the top of the rails, and that after the accident there was a bright spot on the outer side of the west rail.

■ It is urged on the plaintiff's behalf that there was enough evidence to permit an inference that the deceased attempted to cross before the train came in sight, that the rear wheels of the truck were unable to mount the west rail on account of the height of the rail above the gravel, that the truck was thus halted on the crossing, and that the engineer on the train should have seen it standing still on the crossing in time to stop the train. Some such theory of interrupted movement was indispensable to the plaintiff's case, for if the truck was hit while moving across the track, the deceased was chargeable with contributory negligence as matter of law under the stop, look and listen rule. He had a clear view of the track to the north for nearly a quarter of a mile before starting to cross, and the crossing was a short one. While there is said to be a presumption in death cases that the deceased did stop, look and listen, the presumption yields to "incontrovertible physical facts" showing that the deceased before attempting to cross had a clear view of the track for a long distance in the direction from which the train approached and must have seen the train if he had looked. Radziemenski v. Baltimore & Ohio R. Co., 283 Pa. 182, 128 A. 735; Weber v. Pittsburgh R. Co., 300 Pa. 351, 150 A. 624; Lamp v. Pennsylvania R. Co., 305 Pa. 520, 158 A. 269, 84 A.L.R. 1217. But where there is evidence that the automobile was stalled on the track long enough for the train to have come into view after the deceased started to cross, it cannot be said as matter of law that he ignored the stop, look and listen rule. Vlasich v. Baltimore & Ohio R. Co., 307 Pa. 255, 161 A. 70.

■ The evidence is too meagre to indicate that the truck was ever motionless on the rails. The bright spot on the rail may have been caused by a spinning of a rear wheel, as the plaintiff urges; it may have been due to a scraping when the train hit the truck or to any one of a number of other causes. The matter is the merest guesswork. If we pass this difficulty and assume that the truck did become motionless on the crossing, we find no basis for

the further inference that the truck was in that position long enough for the engineer to have observed it and stopped the train short of the crossing. The fault for this unfortunate fatality is left at large by the plaintiff's proof. Nelms v. Pennsylvania R. Co., 268 Pa. 292, 109 A. 673. The presumption that the deceased used due care bears only on the issue of contributory negligence; it does not help the plaintiff on the issue of negligence by the defendant, the defendant being entitled to a like presumption of due care on that issue. The trial court properly held that there was insufficient evidence to take the case to the jury.

In re BIRO.
No. 74.

Circuit Court of Appeals, Second Circuit.
Nov. 6, 1939.

Samuel·O. Kuflik, of New York City, for bankrupt-appellant.

T. John McKee, of New York City (Archibald Palmer, of New York City, of counsel), for creditor-appellee.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

PER CURIAM.

A creditor filed specifications of objection to the bankrupt's discharge to which exceptions were taken by the bankrupt that were in part sustained with leave to amend. There was no appeal from that order but instead the objecting creditor amended the specifications. The bankrupt thereupon excepted to the amended specifications. His exception to the first specification was sustained and the creditor did not appeal. His exception to the remaining specifications, numbered, second, third and fourth, were all overruled and the bankrupt has appealed.

The contention that the amended specifications were bad because verified only by the creditor's attorney upon information and belief cannot be sustained. Brooks v. Collins et al., 5 Cir., 29 F.2d 732; In re Perelstine, D.C., 15 F.2d 64. See also, New General Order No. 38, 11 U.S.C.A. following section 53.

The second amended specification alleges "that the said bankrupt has destroyed, concealed or failed to keep books of accounts or records from which his financial condition and/or business transactions with respect to the sum of One Hundred Thousand ($100,000) Dollars, received from said Henriette Bethell, might be ascertained or discovered."

This specification is certainly good in the part alleging a failure of the bankrupt to keep books of account from which his financial condition could be ascertained. In re Feuer, 2 Cir., 4 F.2d 892. As to destruction or concealment it is not enough to rely upon the words of the statute, 11 U.S.C.A. § 32, sub. c, but there should be a statement sufficiently explicit to enable the bankrupt to know what it is claimed that he has destroyed or concealed. In re Feuer, supra. This specification, however, does satisfy that requirement in that it is confined to books of account with respect to a definite sum of money received from the objecting creditor.

The third specification alleged the making of a false oath as to which the original specifications contained nothing and so was not a permissible amendment. Northeastern Real Estate S. Corp. v. Goldstein, 2 Cir., 91 F.2d 942.

The fourth specification alleged that the bankrupt had "committed an offense punishable by imprisonment under the Bankruptcy Act, in that he knowingly and fraudulently embezzled the said sum of One Hundred Thousand ($100,000) Dollars". This is but a general allegation that the bankrupt embezzled the sum named and is not sufficient. While embezzlement is, indeed, an offense punishable by imprison-

ment it is not such an offense under the Bankruptcy Act unless the embezzled property came into the charge of the accused "as trustee, receiver, custodian, marshal, or other officer of the court". 11 U.S.C.A. § 52, sub. a. Had the sort of embezzlement which is an offense under the Bankruptcy Act been alleged in the specification it would still have been subject to exception as new matter under the rule of Northeastern Real Estate S. Corp. v. Goldstein, supra.

The only specification which should have been held good is the second.

Order modified accordingly.

### HELVERING, Com'r of Internal Revenue, v. BOEKMAN.

### No. 34.

Circuit Court of Appeals, Second Circuit. Nov. 6, 1939.

Sewall Key, Acting Asst. Atty. Gen., and L. W. Post, Sp. Asst. to Atty. Gen., for petitioner.

George S. Hills, of Bartlesville, Okl., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The question in this appeal is whether the taxpayer, a Dutchman, was properly assessed under § 119 of the Revenue Act of 1928, 26 U.S.C.A. § 119, upon income from sources within the United States, received during the year 1931. He was a produce and commodity broker, doing business in Amsterdam and Hamburg, in partnership with one, Cardozo; he was also a member of two American produce exchanges. Until the period in question it had been his practice to take orders from customers in Europe and cable them to brokers, who were also members of these two exchanges. These brokers executed the orders, and the taxpayer would thereupon either pay them, or collect from them, and account to his customers, whom he charged full broker's commissions. His profits arose from the fact that, since he was a member of the exchanges where the orders were executed, the brokers charged him only half commissions, leaving the