**In re MANASSE.**

**MANASSE v. WOLF et al.**

**No. 7743.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 11, 1942.

Rehearing Denied March 6, 1942.

Avern B. Scolnik and Henry S. Blum, both of Chicago, Ill., for appellant.

Ross Langdon and Jesse Brown, both of Chicago, Ill., for appellees.

Before SPARKS and MINTON, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellant who was adjudicated a bankrupt on March 5, 1940, on his voluntary petition, appeals from confirmation by the District Court of an order of the referee denying him a discharge for failure to keep books from which his financial condition could be ascertained, and for concealment of an asset, namely a bank account.

The facts as set out in the referee's certificate are amply supported by the evidence. Appellant is a lawyer, about thirty-

five years of age, admitted to practice in 1928. He had previously been engaged in a real estate, insurance and mortgage business started by his father in 1911, and engaged in by various members of his family. After his admission to the Bar he had opened his law office in the family office and deposited his earnings in the family business account. Between the years 1929 and 1932, the bankrupt incurred a number of obligations, all arising out of business transactions of the firm, from mortgages signed by him jointly with other members of the family. The claim of the objecting creditor, appellee Wolf (for $6,742), was reduced to judgment in 1932. The referee found that the bankrupt was insolvent at all times after 1930.

Appellant married in June 1933, and a few days thereafter, a checking account was opened in the name of his wife with her personal funds in the amount of $250. (The record elsewhere shows that on the day following their marriage, her mother gave her the sum of $1500 which represented savings by the mother from contributions made by her out of her earnings for the eight years preceding.) Appellant had a power of attorney in this account and used it in all ways as his own, signing checks and depositing and withdrawing funds, his own and those of his clients. The same system was employed with respect to other bank accounts opened from time to time with funds of the wife to take the place of accounts closed for various reasons. For a period of about three years, to January 1938, appellant and his wife maintained a joint checking account, but with the exception of this, appellant's name never appeared on any of the accounts although he used each account in his wife's name very extensively in carrying on his profession. The referee comments on the fact that of a total of 948 checks drawn on the bank account from November 1935 to the date of bankruptcy, only 90 were drawn by the wife, eleven of those being for insurance premiums on policies on his own life, and most of the others being for household and personal expenses which appellant charged to himself in his books. There was on deposit at the time of bankruptcy the sum of $381, no part of which was scheduled by the bankrupt as an asset (although the record elsewhere shows that he scheduled his wife as a claimant in the amount of $227).

In the detailed books of account maintained by appellant, he entered all transactions which in his judgment affected the debtor-creditor relationship between himself and his wife, exercising his own discretion as to what items should be charged as debits and credits in his books on her account. The referee found that his status as a debtor or creditor of his wife bore no actual relationship to the bank balance on hand from time to time.

In addition to the foregoing facts set forth by the referee, the record also discloses the fact that appellant made extensive use of a vault box in his wife's name at the Harris Trust and Savings Bank. He testified that he had no record of how much he had in the vault at any one time, as such, and that he never carried an item on his books as an asset, but that his books showed cash on hand, and he did not differentiate between that and cash in the vault, even though the vault was in her name. Such money was kept in an envelope, segregated from her funds in the vault. He also said that at times he had as much as $1100 on hand, all of which was in the vault in her name, reflected on his books as cash in hand. He explained his method of balancing his books monthly, charging everything which did not appear otherwise to an item denominated "MGM Personal," a frankly arbitrary entry having no relation to any actual or specific expenditure.

The record also discloses, with respect to the completeness of his books, or lack of completeness, that only two items on which claims were scheduled by him in his bankruptcy petition were carried on the books or ascertainable therefrom. One of these was the claim of his wife for $227. The obligations incurred in the family business, including that of appellee Wolf which had been reduced to judgment prior to the marriage of appellant and the opening of the various accounts in his wife's name, nowhere appear.

The schedules filed by the bankrupt do not appear of record, but the parties stipulated to the liabilities there set out, and that they listed no assets other than personal property claimed as exempt, and accounts receivable including a deposit in a closed bank (presumably one maintained by the bankrupt prior to his marriage and closed in 1932).

In addition to their objections as to the books and the bankrupt's concealment of his bank account which the referee sustained, the objecting creditor and the trustee in bankruptcy made certain other objections

as to which the referee found that they had failed to sustain the burden of proof, and it is unnecessary for us to refer to them.

The Bankruptcy Act, as amended, provides: 14 sub. c. "The court shall grant the discharge unless satisfied that the bankrupt has * * * (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; * * * or (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed * * * any of his property, with intent to hinder, delay, or defraud his creditors * * *." 11 U.S.C.A. § 32 sub. c (2) and (4).

We have here no charge that the bankrupt failed to keep any books. On the contrary, it is admitted that he kept a very detailed and elaborate set of books. But the charge is, in effect, that his financial condition could not be ascertained from such books in spite of their detail, and that it was brought to light only after protracted hearings. Appellees say, "The true situation was discovered not from the books, but only after it was demonstrated, through the examination of the bankrupt, (a) that the purported debtor-creditor relationship evolved by the bankrupt and supported by the books, was false; (b) that the bank account alleged to be his wife's was in fact his; (c) that the entire situation was evolved and maintained as a device to prevent his creditors from reaching the funds and property of the bankrupt."

What constitutes "books of account or records from which financial condition and business transactions might be ascertained"? Is it sufficient that detailed and elaborate books be kept from which the bankrupt himself is able to explain everything? It is to be noted that appellees do not deny that the bankrupt's financial condition was brought to light, and the referee conceded that the transactions had been quite fully explained. However, much extraneous matter had to be explained before the actual financial condition came to light, and without such explanation on the part of the bankrupt himself, the books were practically useless as a means of ascertaining his

actual condition. Furthermore, the books kept by him made no attempt to show any claims against him arising out of his business transactions as distinct from his professional, although a substantial one had been reduced to judgment before the opening of the first account in his wife's name.

Appellant's case is not to be considered by comparison with those of uneducated or illiterate individuals where courts have sometimes exercised their discretion to grant discharge in spite of the bankrupt's failure to keep satisfactory books or records. See, for example, International Shoe Co. v. Lewine, 5 Cir., 68 F.2d 517; Hedges v. Bushnell, 10 Cir., 106 F.2d 979. Other courts have followed a stricter rule. In White v. Schoenfeld, 117 F.2d 131, 132, the Circuit Court of Appeals for the Second Circuit stated, "Congress has shown a disposition towards increasing strictness as to § 14, * * * sub. c (2). * * * What will justify that failure [in that case, to keep any books] depends largely upon how extensive and complicated the bankrupt's business is—a cobbler will succeed with much less than a manufacturer—but the important change is that since 1926 no moral obliquity need be shown. Honesty is not enough; the law demands as the condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them." See also In re Herzog, 121 F.2d 581, where the same court upheld the ruling of a referee denying discharge to co-partners whose books were found to be unsatisfactory in that they failed to reflect the distinction between transactions carried on in the partnership name and in the name of a corporation organized by them to conduct the same business. The court held that the books did not reflect the true financial condition of the bankrupts. "Men who do business in two capacities should know that they must keep a record which will show in which capacity they were acting in a given transaction. Without this the record is of no assistance to creditors."

Here we have the case of a lawyer who was well aware of the requirement that he keep books which would truly reflect his financial condition, and fully competent to do so. He says that he adopted the system employed in order to protect the interest of his wife in the fund needed to maintain the

account (apparently $200), over which he exercised sole control and in which he deposited many of his own funds along with those of his clients.

We are convinced that, in spite of appellant's assertion to the contrary, the evidence of appellant himself amply supports the conclusion of the referee that "the account in question was opened not for the purpose of protecting the wife's money from the claim of creditors of the bankrupt, but was maintained for the purpose of placing the money of the bankrupt beyond the reach of his creditors, and that the whole purpose of the bank account and of the account shown on the bankrupt's books was to enable the bankrupt to have a convenient place of depositary for his funds, which being ostensibly the property of the wife was not subject to execution on behalf of his creditors. It is difficult to believe that if the bankrupt were not hopelessly insolvent, he would have adopted the device he did adopt of establishing the bank account in the name of his wife and maintaining on his books of account the elaborate records he did maintain, purporting to show debits and credits as between himself and his wife."

Appellant contends that appellee Wolf's amended objections were objectionable in that they enlarged the specifications after the expiration of time for filing objections. He has reference to the fact that the objections of both appellees were originally stricken by the referee on appellant's motion to dismiss, with leave to file amended specifications. Thereafter both appellees filed their amended specifications. Wolf again repeated his charge that "Bankrupt failed and neglected to keep and maintain books of account or records from which his financial condition and business transactions might be ascertained," adding the detail that the books did not contain any account entitled "Cash in Bank," but recorded bank transactions on the basis of the assumed and unwarranted debtor-creditor relationship between bankrupt and his wife. Appellant urges that this and other paragraphs of explanation of the charge go to the charge of *falsification* of books rather than failure to keep books, hence represent an enlargement of the charge. There is no merit in this contention. We repeat that the charge against appellant is not failure to keep books, but instead is failure to keep books from which financial condition may be ascertained. It seems clear to us that evidence of any device by which true financial condition is concealed may be used to support the charge as made. Cf. In re Biro, 2 Cir., 107 F.2d 386.

Order affirmed.