In re Reba Joyce REAGAN f/d/b/a
Joyce's Gifts, Debtor.

Leon STEINBERG, Trustee, Plaintiff,

v.

Reba Joyce REAGAN, Defendant.

Bankruptcy No. 3–80–01296.
Adv. No. 3–81–0187.

United States Bankruptcy Court,
E. D. Tennessee.

July 29, 1981.

Leon Steinberg, Knoxville, Tenn., for plaintiff.

Glen B. Rutherford, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

One of the primary goals of the Bankruptcy Act is "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Williams v. United States Fidelity & Guaranty Company*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915). This was true under the former Act and is equally true under the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101, et seq.

In the case at bar, the trustee seeks denial of the debtor's discharge alleging as grounds therefor subsections (3), (4), and (5) of § 727(a): [1]

---

1. "(a) The court shall grant the debtor a discharge, unless—

 .    .    .    .    .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained,

unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

 .    .    .    .    .

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, docu-

## I

In her bankruptcy petition filed October 7, 1980, the debtor stated that she formerly engaged in business as "Joyce's Gifts," Elks Plaza, Gatlinburg, Tennessee, but that she had been "out of business" since April 1980. Paragraph 2, Statement of Affairs. Further, she stated that her books and records were in the possession of Denton and Denton, an accounting firm. Paragraph 5. She also stated that she had neither transferred any property nor made any gifts during the preceding year. Paragraph 12. Regarding losses suffered during the past year, she stated as follows:

"Lost home by fire in July 1979 (partly covered by insurance). Was robbed by ex-husband of personal and business jewelry, was twice robbed of shop merchandise and clothing (robbed in February and July), Cadillac stollen [sic] on Sept. 15." Paragraph 14.

The debtor, Mrs. Reagan, scheduled liabilities of $132,785.77, and assets of $21,110.00, including a 1980 Cadillac valued at $12,000.00, and two Tennessee pearl rings valued at $7,000.00 (pledged to the First National Bank of Gatlinburg). Pursuant to § 341 Mrs. Reagan was examined at a meeting of creditors held November 6, 1980. As the result of her testimony at that time, the trustee requested that she make certain amendments to the schedules previously filed by her. See letter dated November 24, 1980, Trustee to attorney for debtor. On March 4, 1981, the trustee filed objections to her discharge. Section 727(a)(3), (4), (5). On March 5, 1981, an "Amended Petition" was filed, signed by the attorney for the debtor, but neither signed nor verified by the debtor as required by Bankruptcy Rule 109, 110. The "Amended Petition" states that the debtor was granted a divorce on February 8, 1980; that she had sold some store fixtures for approximately $10,000.00

in September 1980; that she had sold a truck in early 1980 for $4,000.00; and that "all of the petitioner's business books were in her 1980 Cadillac which was stolen in September, 1980."

On March 25, 1981, Mrs. Reagan by written motion moved to "withdraw" her bankruptcy petition. Upon notice to all creditors and after a hearing held on April 16, 1981, the motion was denied, the trustee and creditors objecting to such dismissal. Mrs. Reagan did not appear at that hearing but was represented by her attorney.

On April 21, 1981, Mrs. Reagan filed an answer to the trustee's complaint objecting to her discharge. She denied that she had destroyed, mutilated, concealed or failed to keep or preserve books of account or records, or that she had concealed, transferred or disposed of any property with intent to defraud her creditors. She admitted that some of the information given in her original bankruptcy petition was incorrect but asserted that this occurred because she "was extremely upset and unnerved over the recent series of unfortunate events which had befallen on her." She also stated that she had since filed an amended petition and would "probably be filing another amended petition." With reference to her books and records, she stated that "Denton and Denton formerly had her books and records, however, these records were turned back over to her sometime in May of 1980;" that "all of her books, accounts and records were in her 1980 Cadillac which was stolen from Regas parking lot in Knoxville, Knox County, Tennessee, on September 17, 1980."

■ Trial on the trustee's objections to discharge was held June 8, 1981, upon notice to all parties in interest. Again, Mrs. Reagan failed to appear. Her attorney did appear, however, and participated in the trial.[2]

---

ments, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ...." 11 U.S.C. § 727(a)(3), (4), (5).

2. Notwithstanding the failure of the debtor to appear at the trial objecting to her discharge, the court may proceed to determine whether the discharge should be denied on a ground specified in § 727 of the Code. See Advisory Committee's Note, Bankruptcy Rule 406.

Mrs. Anna Mae Denton of Denton and Denton, Accountants, testified that her firm had kept records for Mrs. Reagan, d/b/a Joyce's Gifts, and had prepared her tax reports for some years. She further testified, however, that neither she nor her firm had prepared any 1980 returns nor did they have in their possession any books or records of Mrs. Reagan, other than copies of some sales tax returns.

Gary Jones, a detective with the Knoxville Police Department, testified that the original police report concerning Mrs. Reagan's Cadillac, reported stolen on September 17, 1980, did not show any report of books and records having been stolen, only the car and three signed "Tiffany Paintings" valued at $9,000.00.

Detective Jones also testified concerning a reported burglary turned in by Mrs. Reagan on July 31, 1980. Coll. Ex. 1. The report indicates that Mrs. Reagan stated she believed her ex-husband had come into her apartment and had stolen her rings and tape recorder, after she had gone to town and left the door unlocked. An automobile was also reported to have been stolen. The rings, 30 in number, were valued at $21,323.00, the tape recorder at $750.00. The automobile was identified as a "1980 Chevrolet."

Detective Jones also testified that he personally investigated a burglary report turned in by Mrs. Reagan on August 25, 1980. The police report indicates that Mrs. Reagan had stated that a large number of personal items—cameras, clothing, and jewelry—with an estimated value of $101,120.00 had been stolen from her apartment at 1529B, Coleman Road, Knoxville. Coll. Ex. 1.

Detective Jones testified that when he went to the apartment on the following day Mrs. Reagan answered the door. A man he knew as Ben Maples, the former husband of Mrs. Reagan, was in the apartment with her. Detective Jones testified he found no evidence of any forced entry; that the apartment was neat and orderly, and that none of the boxes or items in the apartment appeared to have been disturbed. In his opinion no one could have taken jewelry from its hiding place unless he knew exactly where it was located.

Detective Jones requested Mrs. Reagan to wait for the crime lab to come and conduct a complete investigation of the apartment. As Mr. Jones was leaving, however, Mrs. Reagan got into her car and left. The Police Department made no further investigation into the reported burglary.

Mrs. Louise Mynatt, bookkeeper for David Nieman, Inc., testified that on May 19, 1980, Mrs. Reagan came by their place of business in Knoxville and picked up merchandise (jewelry) in the amount of $11,185.00. On June 12, 1980, she picked up merchandise (jewelry) in the amount of $2,135.00 and gave a check and notes for payment. The check was returned unpaid. Mrs. Reagan gave her former place of business as her address and did not advise the creditor that she had gone out of business. See Claim No. 4 filed November 6, 1980.

Claim No. 9 filed by Hamilton Bank of Morristown reflects that on October 16, 1980, nine days after she filed her bankruptcy petition, Mrs. Reagan purchased a 1980 Lincoln automobile from Morristown Lincoln-Mercury. The delivery price was $14,459.34 with a $2600.00 cash down payment. The down payment apparently came from an insurance settlement for the stolen Cadillac, however, Mrs. Reagan did not show in her petition that she had any claim pending against an insurance company. Further, she showed she had only $600.00 cash when she filed her petition. Schedule B–2a.

A proof of claim filed by Kimball's Jewelers indicates that "Reba Joyce Reagan, Elks Plaza, Gatlinburg, Tennessee," purchased merchandise between April 4, 1980, and August 13, 1980, in the following amounts:

| April 4 | $ 401.48 |
| May 27 | 120.84 |
| August 4 | 3.18 |
| August 13 | 7.95 |
| August 13 | 164.30 |
| August 13 | 1,158.59 |
| August 13 | 2,983.93 |

An attached statement also shows a credit of $500.00 on August 13.

## II

■ The debtor's discharge will be denied. § 727(a)(3), (4), (5). Although formerly engaged in business, Mrs. Reagan failed to keep, or, if she did keep, to turn over to the trustee any books, records or papers from which her financial condition or business transactions might be ascertained. Her statements in the petition and the amendment submitted by her attorney—(1) that the records were in the possession of Denton and Denton, (2) that the records were stolen along with her Cadillac in September 1980—are wholly inconsistent and irreconcilable. Further, she reported no theft of books and records to the police when she reported the theft of the Cadillac.

Mrs. Reagan has failed to explain satisfactorily the deficiency of assets to meet her liabilities. In fact she has failed to submit any explanation or even to appear at the trial on objections to her discharge. It is clear that she had possession of a considerable amount of property within one year of the filing of the bankruptcy petition. What disposition she made of that property is unclear. Creditors are entitled to the disclosure of all facts surrounding the transfer of property by a debtor—not vague and conflicting statements that the property has been stolen.

The initial statement of affairs filed by the debtor is admittedly false in several respects. She stated she had made no transfers. She stated the books and records were in the possession of Denton and Denton.

She purchased several thousands of dollars of jewelry between May and August 1980, after she had gone out of business, but she has utterly failed to show the disposition of that property.

The trustee has established the facts essential to support his objections. Bankruptcy Rule 407. The discharge will be denied. § 727(a)(3), (4), (5). See, generally, 4 Collier on Bankruptcy ¶ 727.03, 727.04, 727.07, 727.-08 (15th ed.).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.