**In re Robert HOFMANN, Debtor.**

**UNITED STATES of America, Plaintiff,**

v.

**Robert HOFMANN, Defendant.**

**Bankruptcy No. 87–01341–BKC–TCB.**
**Adv. No. 87–0405–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 9, 1987.

See also, 76 B.R. 853.

Jose F. DeLeon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Philip T. Weinstein, Weinstein & Garvin, P.A., Miami, Fla., for defendant.

The Roth Trustee Corp., Miami, Fla.

Leon B. Kellner, U. S. Atty., Attn: Civ. Div., Miami, Fla.

John T. Lyons, IRS Dist. Counsel, Miami, Fla.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The Government, as a creditor, opposes the debtor's discharge under 11 U.S.C. § 727(a)(2)(A), (3), (4), and (5). The debtor has answered and the matter was tried on October 1. I find that discharge must be denied under § 727(a)(3) and (5).

### Facts Pertinent to § 727(a)(3)

The debtor is an attorney who has practiced 33 years. In October 1979 judgment was entered against him for $365,840 on an I.R.S. claim for self-assessed but unpaid taxes. The Government's income tax claim, including unpaid taxes through 1983

and accumulated interest and penalties, presently exceeds $1.1 million.

During the year judgment was entered against him, or immediately thereafter, the debtor closed his office but continued his real estate law practice and his related business as a real estate broker. Though he estimates his annual income since 1979 is from $50,000 to $60,000, his tax return reported $72,700 in fees for 1985. His secretary formerly kept his office accounts. However, he has maintained no accounts for either his business nor his personal affairs since 1979 and uses his office account as a personal as well as a business account.

The only financial records he has maintained during the past eight years are his check stubs and cancelled checks and occasional informal notations in separate files relating to various real estate transactions he has handled for clients. In some of these matters he is managing property for one or a group of clients, by requesting funds from his clients and paying tax and mortgage payments from those funds.

There are no statements of account either in these files or elsewhere. In his words:

"I may mark on the note or I would probably mark on the inside of the file when somebody sent it, that it was sent in, and then when they all come in, I would write a check for it." Tr. 87.

There is no ledger of billings, receipts or accounts payable other than the debtor's two-paged recently prepared, partially illegible handwritten tabulation labelled "Fees 1985". Govt.Ex 1. This tabulation appears to reflect exactly eight fees for that year totalling $72,700, eight fees (from a new set of clients) for 1986 totalling $59,-800, and four fees for 1987 (apparently for the three months preceding his bankruptcy filing) totalling $42,086. These entries, which are undated, do not always match deposits in the debtor's bank accounts. The tabulation, which includes two question marks inserted by the debtor, requires a degree of blind faith which only the debtor's loved ones could muster.

No ledger or other contemporaneous record provides any assurance that the files proffered by this debtor in fact cover all matters he has handled much less all fees earned or received. Of course, the debtor's tabulation does not even purport to cover any matters commenced before 1985.

This debtor's business records are woefully inadequate, but his personal financial records are a shambles. Dozens of his checks are unexplained. Ten years ago he married a lady who is a multi-millionaire. He tells us that she loans him money (about $5,000 a month) and that whenever he can he has repaid these loans. He has also attempted to reconcile a discrepancy between his bank accounts and his tax return by saying he borrowed $19,000 from another lady in two 1986 transactions. However, there is no promissory note or other documentation of the loans from either lady, nor any statement of the supposed account.

He draws cash from his personal account to pay all household expenses, keeping no record of these accounts. He plays high stakes gin rummy regularly with friends, and many of his cash withdrawals and checks are to cover his losses. There are no records of his winnings.

The fact that the debtor's abandonment of his office and the accounting system maintained by his secretary, plus the asserted reduction of his practice and the commingling of his business and personal affairs all coincided with the large tax judgment against him persuade me that he has *deliberately* failed to keep records from which his financial condition or business transactions might be ascertained. Indeed, his attorney's memorandum in this matter concedes that his low bank balance and cash transactions "were in part prompted by the Internal Revenue Service levies from time to time on his bank account." (At p. 6) I believe that his financial dealings with his wife are prompted by the same motive.

This conviction is fortified by the evidence that during the first quarter of 1987, the debtor received $54,845 from his ac-

count with a securities broker. There is no record in any of the debtor's financial "records" of any transfers to the broker. The debtor has declined to answer any questions concerning this account, on Fifth Amendment grounds. I infer that not all of the debtor's income is being accounted for in the "records" kept by him.

### Controlling Legal Principles § 727(a)(3)

■ A discharge must be denied under § 727(a)(3) to a debtor who has:

"failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

The Government bears the burden of persuasion, even as to the negative in the last clause. *Matter of Oesterle*, 651 F.2d 401, 403 (5th Cir.1981).

■ As to the sufficiency of the debtor's records, we are guided in this Circuit by *Goff v. Russell Co.*, 495 F.2d 199, 201 (5th Cir.1974). The Court summarizes its long established rule, construing this section's identical statutory predecessor, in the following words:

"The court recognized that full detail is not required but that there should be written evidence, orderly made and preserved, from which the present and past financial condition of the bankrupt may be ascertained with substantial completeness and accuracy."

*See also* 4 *Collier on Bankruptcy* (15th ed. 1987) ¶ 727.03[3].

I find that this debtor's present and past financial condition cannot be ascertained with any completeness or accuracy from the fragmentary records he has kept and maintained.

In anticipation of this finding, debtor has argued that: "The debtor's records are adequate under all the circumstances."

As the Court noted in *Goff*:

"The failure to keep adequate books or records may often be 'justified under all

the circumstances.' Obviously, an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account."

This is not such a case. *Collier supra* ¶ 727.03[4]. An attorney/broker with an admitted annual income of at least $50,000 and a securities account which generated $54,845 payable to the debtor immediately before bankruptcy, is no unsophisticated wage earner and this debtor's lack of adequate records was a deliberate evasive tactic, not a circumstance dictated by either his lack of sophistication, the nature of his occupation or impaired faculties. *See Matter of Russo*, 3 B.R. 28, 35 (Bankr.E.D.N.Y. 1980).

The debtor relies on *Matter of Oesterle*, 651 F.2d 401, 402–03 (5th Cir.1981), which affirmed a decision entered by me finding that Oesterle's failure to maintain any financial records after the bankruptcy of his corporation was justified:

"because he has been engaged in no significant business transactions and has no property."

His failure to retain his corporate records was justified by the fact that the corporation went into bankruptcy and:

"All the records of his corporate business activities were, of course, surrendered to the Nevada bankruptcy trustee."

I see no parallel with the circumstances of this debtor.

### Discharge Denial Under § 727(a)(5)

The Government charges that the debtor has failed to explain satisfactorily his loss of certain assets: (a) $53,809 received from his wife in 19 payments during the three and a half years between January 1983 and July 1986; (b) $10,000 he borrowed from his wife in 1987; and (c) over $27,000 from his checking account for which there is no satisfactory explanation.

The inadequacy of the debtor's records has already been treated in detail. As a result of this inadequacy, the debtor's attempts to explain what happened to these admitted assets is unconvincing when there

is any explanation at all. We need not burden this already lengthy opinion with the details of the evidence, which is not in conflict.

The statute denies discharge where:

"the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

It is undisputed that the debtor's assets fall far short of his liabilities.

The leading case in our Circuit is *In re Chalik*, 748 F.2d 616, 619–20 (11th Cir. 1984). As the Court noted:

"At trial, the party objecting to a discharge has the burden of proving the objection. Bankruptcy Rule 4005 (1983). But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss. ... Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."

*See also* 4 *Collier on Bankruptcy* (15th ed. 1987) ¶ 727.08.

■ I agree with the debtor that he need not explain the loss of the $10,000 he borrowed from his wife in 1987 *after* he filed for bankruptcy. Although this point does not appear to have been discussed in any reported case, I am satisfied that the statute is intended to focus on assets which, if not lost, would have been a part of the bankruptcy estate. In this chapter 7 case, a postpetition loan would not have been a part of the bankruptcy estate.

■ The debtor's explanation for the disappearance of the $53,809 he received from his wife is that the Government has stipulated that these loans have been repaid in full and that the wife has lost nothing. The argument misses the target. It is not stipulated that the loans were repaid from assets which would have been part of the bankruptcy estate. The statute does not preclude creditors other than the lender of the missing funds from complaining that the borrowed funds are unaccounted for.

The record does not support the implausible conclusion that the loan was repaid with the borrowed funds.

I find that the debtor has failed to explain satisfactorily the loss of the assets identified above.

### Charges Under § 727(a)(2)(A) and (4)

The Government has not carried its burden of proving its alleged alternative grounds for discharge denial under these two subsections.

■ I agree with the Government that its allegations with respect to a Lincoln automobile may be amended to conform to its proof with respect to a Eurocar, however, the debtor never had title to nor any equitable interest in the car. Title was in the debtor's wife who transferred it to the debtor's son, a medical intern. The debtor made 15 payments (a total of $3,823) on the car while his son was interning. His son assumed all subsequent payments.

I find no transfer with intent to hinder, delay or defraud creditors on this debtor's part. Furthermore, § 727(a)(2)(A) requires that the fraudulent transfer occur "within one year before the filing of the petition". The petition was filed April 21, 1987 in this case. If there was a transfer, it occurred more than a year before bankruptcy.

■ The allegations under § 727(a)(4) relate to the same automobile transaction on the ground that the debtor:

"knowingly and fraudulently, in or in connection with the case (A) made a false oath ..."

by failing to list the car as his property when he filed for bankruptcy. I find that it was never his car and that his omission of this "asset" was not a knowing or fraudulent one.

As is required by B.R. 9021(a), a separate judgment will be entered denying the debtor's discharge under § 727(a)(3) and (5). Costs may be taxed on motion.