**MERIDIAN BANK**

v.

**Eugene ALTEN, Marlene Alten, and Thomas J. Subranni, Trustee**

**Eugene and Marlene Alten, Appellants.**

**No. 91–5365.**

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1992.

Decided March 13, 1992.

Janet Gold (argued), William V. Eisenberg, Eisenberg & Gold, P.C., Haddonfield, N.J., for appellants.

Peter J. Mooney (argued), J. Robert McMahon, White and Williams, Philadelphia, Pa., for appellee.

Before COWEN, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

In this bankruptcy case the bankruptcy court entered an order discharging the debtors even though they maintained few if any records of their financial dealings. The district court reversed. We will affirm the district court, based on a conclusion that the debtors did not meet their burden of justifying failure to keep adequate records under 11 U.S.C. § 727(a)(3) (1988).

### I.

Eugene Alten and Marlene Alten (collectively "the Altens" or "the debtors") personally guaranteed a loan from Meridian Bank (Meridian) for a development project which failed. Meridian thereafter obtained a judgment against the Altens for $3,836,-181. At that point the Altens stopped using bank or other financial accounts for their financial transactions and began dealing only in cash and money orders. The Altens candidly acknowledged their reason for doing so was to avoid having bank or other financial accounts upon which their creditors could levy liens or effect collections. They maintained scant or no records of their business, professional or personal transactions, again to avoid having to pay the Meridian judgment or other debts.

Mr. Alten is an attorney licensed to practice law in Pennsylvania since 1958, and is also a member of the bar of the United States Tax Court. He has been self-employed as an international investment and real estate consultant since 1982. Prior to 1977 he engaged in the private practice of law specializing in real estate. Between 1977 and 1980, following entry of the Meridian judgment, Alten was a consultant and chief operating officer for several Atlantic City enterprises all of which dissolved by 1980.

The Altens filed for bankruptcy under Chapter 7 on May 22, 1985, seeking to discharge the Meridian debt. Meridian opposed the discharge, alleging that the Altens concealed their assets, failed to keep records as required by the Bankruptcy Code, and made fraudulent oaths regarding their financial affairs.

The evidence submitted to the bankruptcy court was scant. Mr. Alten's financial records for the period from 1982 through 1986, both business and personal, were virtually non-existent. The sole written records presented to the bankruptcy court of income received during that period were three handwritten sheets of paper, purporting to show income from his international consulting business and reflecting gross revenues of approximately $380,000. Mr. Alten kept no time records for his consulting practice, produced no written agreements or correspondence with clients concerning payment of fees or work performed, and had no evidence of payment of fees or expenses by clients. He produced no copies of checks or money orders reflecting payment or reimbursement of expenses. Other evidence presented to the bankruptcy court included a handwritten ledger showing dates and travel destinations, as well as income tax returns which lacked supporting documentation for $120,-000 in business expense deductions Mr. Alten claimed on those returns.

Following trial the bankruptcy court found no merit in the objections of Meridian and granted the Altens a discharge in bankruptcy. The court held that the Altens' fear of levy of execution on bank and financial accounts by creditors and the nature of Mr. Alten's business justified failure to keep records. The bankruptcy court found that Mr. Alten worked at home, had sixteen clients between 1982 and 1986, and earned a net annual income of less than $50,000 during those years. It acknowledged Mr. Alten's sophistication as an attorney and experienced businessman. Nevertheless, the bankruptcy court con-

cluded that failure to keep records was justified and discharged the Altens' debt to Meridian.

On appeal, the district court held that the bankruptcy court misapplied the record keeping provisions of the Bankruptcy Code, 11 U.S.C. § 727(a)(3),[1] and vacated the discharge of the Meridian judgment. The Altens and their trustee appeal to this court asserting that the decision of the bankruptcy court, finding justification in failure to keep records, was a finding of fact, and that the district court applied the wrong standard of proof in reviewing that decision.

## II.

■ The central issue is whether the Altens were justified in failing to keep records of financial transactions. In reviewing the bankruptcy court's decision, this court, like the district court, "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). *See also Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir.1981).

The Altens argue that the bankruptcy court's finding of justification was a finding of fact subject to a clearly erroneous standard of review. The Altens further argue that Rule 52(a) of the Federal Rules of Civil Procedure limits the ability of an appellate court to set aside findings of fact to instances where such findings are determined to be clearly erroneous. Similarly, Bankruptcy Rule 8013 provides in part that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses."

■ Meridian contends that the district court properly found that the question of whether the Altens' failure to keep or preserve records was "justified" was a mixed question of law and fact within the meaning of 11 U.S.C. § 727(a)(3), and that the district court correctly held that the bankruptcy court misapplied section 727(a)(3) to the facts of this case. A mixed question of law and fact is found whenever a legal precept is applied to the sum of the facts of a case. *See, e.g., In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir.1986); *In re Hammons*, 614 F.2d 399, 403 (5th Cir. 1980).

This court has distinguished three different kinds of facts as fundamental to the anatomy of fact finding in the judicial process, *i.e.*, basic, inferred and ultimate facts.

Basic facts are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. No legal precept is implicated in drawing permissible factual inferences. But an inferred fact must be distinguished from a concept described in a term of art as an "ultimate fact." So conceived, an ultimate fact is a mixture of fact and legal precept.... "The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact."

*Universal Minerals*, 669 F.2d at 102 (citations omitted).

1. Section 727(a)(3) provides that
 (a) The court shall grant the debtor a discharge, unless—

 (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

 The bankruptcy court's determination that all the factual circumstances of the case amounted to justification for inadequate record keeping by the Altens is an ultimate fact. Our review of a bankruptcy court's application of section 727(a)(3) to basic and inferred facts necessitates plenary review of the legal standards applied by the court in its analysis. Thus, we undertake plenary review of the concept of "justification" actually applied by the bankruptcy court in this case, and also of the bankruptcy court's allocation of the burden of persuasion on this issue. *See In re Cox,* 904 F.2d 1399, 1401 (9th Cir.1990).[2]

### III.

It is undisputed that the Altens failed to keep or preserve records of their financial dealings. The question before this court is whether their failure was justified under all the circumstances of the case.

### A.

The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See* 4 Collier on Bankruptcy ¶ 727.–03[1] (15th ed. 1979). The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. Creditors are not required to risk having the debtor withhold or conceal assets "under cover of a chaotic or incomplete set of books or records." *Cox,* 904 F.2d at 1401 (quoting *Burchett v. Myers,* 202 F.2d 920, 926 (9th Cir.1953)).

 The standard for disclosure by a debtor under the Act was announced by the Second Circuit in *In re Underhill,* 82 F.2d 258 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). In that case, the court emphasized that what constituted sufficient record keeping varied with the facts of each case, but in all cases complete disclosure was required.

> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

*Id.* at 259–260. While the debtor may justify his failure to keep records in some cases, a discharge may be granted only if the debtor presents an accurate and complete account of his financial affairs.

 The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must " 'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.' " *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979) (citations omitted). Thus, in order to invoke the protection of the bankruptcy court, the debtor must maintain and preserve adequate

---

**2.** We do not mean to say that, assuming a bankruptcy court has applied the correct legal standards of "justification," the court acts wholly without discretion when making its justification determination. A bankruptcy court may properly exercise discretion when determining, on findings of particular basic and inferred facts, whether a debtor has successfully demonstrated that its failure to keep adequate records was ultimately "justified." Assuming a bankruptcy court correctly applied proper legal precepts when making its 727(a)(3) determination, and that the court's basic and inferred factual findings were not clearly erroneous, the bankruptcy court's ultimate determination should be affirmed absent an abuse of discretion. Thus, appellate review of a bankruptcy court's section 727(a)(3) determination may include review for abuse.

records. If the debtor fails to do so, there must be some justification.

> It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely. To be sure, there may be records which are not books; but it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.

*Underhill,* 82 F.2d at 260. *See also White v. Schoenfeld,* 117 F.2d 131, 132 (2d Cir. 1941) (the law demands as the condition of discharge that the bankrupt produce records or provide adequate reasons for not keeping records); *Office of the Comptroller General of Bolivia v. Tractman,* 107 B.R. 24 (S.D.N.Y.1989) (debtor must disclose information for discharge to be granted); *Broad Nat'l Bank v. Kadison,* 26 B.R. 1015, 1018 (D.N.J.1983) (adequate record keeping is a condition precedent to grant of discharge); *In re Rusnak,* 110 B.R. 771, 776 (Bankr.W.D.Pa.1990) (complete disclosure is a condition precedent to the granting of a discharge); *In re Escobar,* 53 B.R. 382, 388 (Bankr.S.D.Fla.1985) (debtors are duty bound to explain satisfactorily the loss of their assets); *In re Reagan,* 13 B.R. 588, 591 (Bankr.E.D.Tenn. 1981) (creditors are entitled to the disclosure of all facts surrounding the transfer of property by debtor).

■ The Bankruptcy Code does not specify what constitutes justification for maintaining inadequate records; instead it requires the trier of fact to make a determination based on all the circumstances of the case.

> The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*In re Wilson,* 33 B.R. 689, 692 (Bankr. M.D.Ga.1983). *See also In re Oesterle,* 651 F.2d 401, 404 (5th Cir. Unit B July 1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982) (one form of justification is to show that the bankrupt's business was not of such size and complexity that the keeping of books and records was necessary); *Bartolotta v. Lutz,* 485 F.2d 227, 229 (5th Cir.1973) (Christmas tree business not so complex as to require records of financial condition and business transactions); *In re Redfearn,* 29 B.R. 739, 741 (E.D.Tex.1983) (small farmer with limited education not required to keep books).

■ Depending upon the sophistication of the debtor and the extent of his activities, different record keeping practices are necessary. *See, e.g., Goff v. Russell Co.,* 495 F.2d 199, 201–02 (5th Cir.1974) ("Obviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, for a merchant actively engaged in credit transactions."). As an experienced attorney Mr. Alten is not an unsophisticated wage earner. He is a knowledgeable business and professional person who knew the value of maintaining adequate records. He generated substantial revenue and traveled extensively throughout the world, and was in the international investment and real estate consulting business for many years preceding this bankruptcy. Sophisticated business persons are generally held to a high level of accountability in record keeping. As the court stated in *In re Manasse,* 125 F.2d 647, 649 (7th Cir.1942): "Here we have the case of a lawyer who was well aware of the requirement that he keep books which would truly reflect his financial condition, and fully competent to do so." *See also In re Gordon,* 83 B.R. 78, 80 (Bankr.S.D.Fla. 1988) (even though debtor did not operate business of her own, she displayed a level of sophistication that made her failure to keep records unjustified); *In re Hofmann,* 81 B.R. 699, 702 (Bankr.S.D.Fla.1987) (attorney with admitted annual income of

$50,000 had sophistication such that failure to keep records constituted deliberate evasive tactic); *In re Russo*, 3 B.R. 28, 35 (Bankr.E.D.N.Y.1980) (attorney with forty years experience not justified in failing to keep or preserve records of financial condition). Attorneys and other professionals may be held to the standard of care ordinarily exercised by members of their profession.

> What will justify failure depends largely upon how extensive and complicated the bankruptcy business is.... Honesty is not enough; the law demands as the condition of a discharge either that the bankrupt shall produce such records as are customarily kept by a person doing the same kind of business, or that he shall satisfy the bankruptcy court with adequate reasons why he was not in duty bound to keep them.

*Schoenfeld*, 117 F.2d at 132.

Mr. Alten's argument that he had only sixteen clients during the relevant period provides no justification for his complete lack of record keeping. The fact that a business or law practice is small does not by itself justify the failure to keep records. *Baker v. Trachman*, 244 F.2d 18, 20 (2d Cir.1957); *In re Hirsch*, 14 B.R. 59, 62 (Bankr.S.D.Fla.1981). Certainly insolvency cannot be used as an excuse to avoid the obligation to provide records to illuminate that condition.

The obligation imposed upon Alten under section 727(a)(3) to make and preserve adequate records is not imposed upon him because he is an attorney, but rather because he seeks the protection of the Bankruptcy Code's discharge provision. The Code protects creditors of a bankrupt by requiring the debtor to maintain adequate records of his affairs. This is a prerequisite to a discharge under section 727. In order to obtain the benefits of the Code's "fresh start," Alten had a legal duty to maintain adequate records of his income and expenses.[3]

### B.

When a party objects to the discharge of a debtor, that party bears the initial burden of proving that the case falls within one of the statutory exceptions to discharge. Bankr.Rule 4005, 11 U.S.C.; *Oesterle*, 651 F.2d at 404. The creditor must prove facts essential to the objection to discharge. *In re Martin*, 698 F.2d 883, 886–87 (7th Cir.1983); *In re Somerville*, 73 B.R. 826, 833 (Bankr.E.D.Pa.1987). Thus, in order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. *See Decker*, 595 F.2d at 187.

When this court interpreted the record keeping provisions of the Bankruptcy Act in *Decker*, we held that the creditor had the burden of proving that the debtor was not justified in failing to maintain records. *Id.* at 190. At the time of that decision, both the Act[4] and the Rules of

---

**3.** The only specific obligation placed upon Mr. Alten in his capacity as an attorney was Disciplinary Rule 9–102(B)(3) of the Pennsylvania Code of Professional Responsibility, which was in effect at the time of the relevant conduct in this case. This rule provided that a lawyer shall

> maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

Mr. Alten argues that he did not practice law and held no funds for his clients during the five years prior to filing his petition, so that this rule did not apply to him. Since he kept no records, it is impossible for his creditors or the court to determine what funds Alten received from his clients, what income he received, and what records were required of him. Although his status as an experienced attorney is not determinative of his failure to provide adequate justification for the purposes of section 727(a)(3), we note that Alten's word alone is not sufficient to show that Disciplinary Rule 9–102 was not applicable. "Records of substantial completeness and accuracy are required so that they may be checked against the mere oral statements or explanations made by the bankrupt." *Underhill*, 82 F.2d at 260.

**4.** Section 14c of the old Bankruptcy Act provided that

> The court shall grant the discharge unless satisfied that the bankrupt has ... (2) de-

Bankruptcy Procedure[5] required the court to place the burden of persuasion upon the party objecting to the discharge. This put the objector in the "difficult and anomalous position of trying to prove a negative by showing the absence of any justification." *Oesterle,* 651 F.2d at 403. "Were we responsible for writing the law and rules of bankruptcy, we might well agree that the bankrupt should continue to bear the burden of persuasion since he usually possesses the evidence of any justification for his failure to maintain records." *Id.*

In *Decker* we found that former Bankruptcy Rule 407 placed the burden of proof on the objecting party. 595 F.2d at 189. We held that the burden of persuasion rested with the objecting party and did not shift; although once a prima facie case of inadequate records was made out, the burden of moving forward with evidence to show justification fell upon the debtor. *Id.* at 190. Nevertheless, the ultimate burden of persuasion remained at all times with the objecting creditor. *Id.*

The record keeping provisions of the Bankruptcy Code have changed since *Decker* was decided. Under section 727(a)(3) the party objecting to the discharge is no longer required to show reasonable grounds for believing that the bankrupt has committed acts which would prevent his discharge in bankruptcy. The Code now only requires that the creditor make an initial showing that the debtor's records are inadequate; thereafter the burden is on the debtor to prove justification.[6]

At trial, the party objecting to a discharge has the burden of proving the objection. But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss.... Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory.

*In re Chalik,* 748 F.2d 616, 619 (11th Cir. 1984) (citations omitted). *See also In re MacPherson,* 101 B.R. 324, 326 (Bankr. M.D.Fla.1989), *aff'd,* 129 B.R. 259 (M.D.Fla. 1991); *Hofmann,* 81 B.R. at 703.

Likewise, Bankruptcy Rule 4005, which superseded former Rule 407, places the burden of persuasion on the debtor, since the information necessary to establish an excuse for inadequate or non-existent records is generally in the possession of the debtor. Though the text of the new rule is the same as the old, the Advisory Committee Note accompanying the new rule states that

the rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of considerations such

---

stroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; ... *Provided,* That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt.
11 U.S.C. § 32(c) (1976).

**5.** Former Bankruptcy Rule 407 provided that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving his objection." Title I Bankr.Rule 407 (1973) *superseded by* Bankr.Rule 4005, 11 U.S.C. (1988).

**6.** One treatise has summarized the debtor's burden thus:

Just what constitutes a satisfactory explanation has not been expressly defined, but it probably means that the debtor must explain his losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct.... An explanation which is based mostly upon an estimate of the debtor founded upon nothing by way of verification or affirmation by means of books, records or otherwise has been held unsatisfactory. Even though the underlying facts referred to by a debtor may suggest a plausible explanation, the testimony may be so general as to be insufficient. More is required of the debtor in the way of explanation than mere generalities.

4 Collier on Bankruptcy ¶ 727.08 (15th ed. 1979).

as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the debtor than to the objector.

Bankr.Rule 4005 note, 11 U.S.C. (1983).

■ The burden was clearly on the Altens to prove they were entitled to have their debt discharged. The plain language of section 727(a)(3) places the burden on the debtor to justify the lack of adequate record keeping. Fear of liens by creditors can never by itself constitute adequate justification for failing to candidly disclose the financial status of a debtor.

### C.

■ The Altens openly acknowledged their intent to transact business solely in cash in order to avoid creditors levying on their assets. In order to deny discharge for failure to keep records the court need not find that the debtor intended to conceal his financial condition. *See Koufman v. Sheinwald*, 83 F.2d 977, 979 (1st Cir.1936); *In re Shapiro*, 59 B.R. 844, 848 (Bankr. E.D.N.Y.1986); *In re Esposito*, 44 B.R. 817, 827 (Bankr.S.D.N.Y.1984). The only showing required under section 727(a)(3) is that the debtor has unjustifiably failed to keep records of his financial condition.

Although the bankruptcy court found no evidence that the Altens concealed, destroyed, mutilated or falsified records, it did find that they failed to maintain complete records and information. There is ample evidence to support these findings of fact. The bankruptcy court's interpretation and application of section 727(a)(3), however, was erroneous as a matter of law. It reasoned that the cases interpreting section 727(a)(3) were inapposite to the Altens' situation because they involved commingling of funds, *In re Harron*, 31 B.R. 466, 469–470 (Bankr.D.Conn.1983), failure to file income tax returns, *Somerville*, 73 B.R. at 831–32, and transfers of assets and undisclosed property in trust or business transactions. *Broad Nat'l Bank*, 26 B.R. at 1016–17. The bankruptcy court concluded that Meridian had the burden of proving the Altens were not entitled to have the

debt discharged. The plain language of section 727(a)(3) now places that burden squarely on the debtor.

### IV.

 The purpose of section 727(a)(3) is to make full financial disclosure a condition precedent to the grant of discharge in bankruptcy. The Altens failed to maintain adequate financial records, making candid disclosure difficult if not impossible. Nor were the Altens able to prove any facts which were legally sufficient to justify failure to keep records within the meaning of section 727(a)(3). We will affirm the order of the district court vacating the order of the bankruptcy court discharging the debtors.