**M. Barnett GILLMAN,
et al., Appellants,**

v.

**CONTINENTAL AIRLINES,
INC., et al., Appellees.**

**No. 93–319–JJF.**

United States District Court,
D. Delaware.

Sept. 30, 1998.

Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, Delaware. Of Counsel: Stuart D. Wechsler, and Andrew D. Friedman, of Wechsler Skirnick Harwood Halebian & Feffer, New York City, for Appellants.

William D. Johnston, Laura Davis Jones, Roberts S. Brady, and James P. Hughes, Jr., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. Of Counsel: T. Jay Thompson, of Continental

Airlines, Inc., Houston, Texas. Zack A. Clement, and Jill M. McCleary, of Fulbright & Jaworski, Houston, Texas. David M. LeMay, of Hughes Hubbard & Reed, New York City, for Appellees.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is an appeal by Alan Freberg, Frank Debora, Frank Sachs and Lloyd Pressel Co., Inc. ("Appellants"), from an Order of the United States Bankruptcy Court for the District of Delaware. The subject Order confirms the Second Amended Joint Plan of Reorganization ("Plan") of Continental Airlines Holdings, Inc. ("Continental") and Continental Airlines, Inc. ("Continental Airlines") (collectively "Debtors") under Chapter 11 of the United States Bankruptcy Code.

This appeal concerns certain provisions of the Plan and related orders issued pursuant to the Confirmation Order (collectively "Order") which purport to 1) settle and extinguish putative class claims under the federal securities laws that are asserted in a consolidated class action against non-debtor defendants, and 2) permanently stay and enjoin the prosecution of this class action.

For the reasons set forth below, the Court will affirm the Bankruptcy Court's Order.

## BACKGROUND

On December 3, 1990, Debtors, Continental and its subsidiary, Continental Airlines, filed petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. 11 U.S.C. §§ 101, *et seq.* During the pendency of the reorganization proceedings, issues were raised by the Creditors' Committee regarding potential claims that existed against Debtors' present and former officers and directors. Based on the Creditors' Committee concerns, Debtors provided for a $5 million Settlement Fund to settle various claims and enjoin pending litigation, including any claims against former or present officers and directors (Section 12.4) as part of the Second Amended Joint Plan of Reorganization ("Plan").

The Settlement Fund was established because of several indemnification agreements between Debtors and Debtors' officers and directors. For example, Article VI of the Bylaws and the restated certificate of incorporation for Continental contained provisions granting officers and directors of Continental the right to indemnification to the fullest extent allowed under Delaware law. Furthermore, the Bankruptcy Court permitted Debtors to assume certain employment contracts which also contained indemnification agreements. Under the indemnification agreements, Debtors are ultimately liable for claims against its officers and directors as long as the claims arose in a good faith pursuit of the company's business. Because of this, Debtors have maintained directors' and officers' liability insurance policies ("Policy") with an insurance company ("Insurers").

Based on these considerations, Debtors adopted the Plan which included the Settlement Fund. The essential elements of Section 12.4 of the Plan provided that: (1) Debtors agreed that the officers and directors pay $5 million in cash (with funds from the Policy) to Debtors to distribute according to the Plan; (2) Debtors, officers and directors, and the Insurers release one another with respect to the claims at issue; and (3) Debtors receive $1 million of the $5 million from the Settlement Fund for the new corporation that will exist after the reorganization. In addition, the Plan required the Bankruptcy Court, upon confirmation of the Plan, to issue a permanent injunction against existing actions, including any pending or future actions against the Insurer or any of Debtors' former or present officers and directors.

On January 8, 1993, the Bankruptcy Court issued an order approving Debtors' Disclosure Statement describing the Set-

tlement Fund and agreement. Thereafter, the majorities of each class of unsecured creditors voted to accept the Plan, as well as ninety-six of the one hundred classes of secured creditors. Finally, on April 16, 1993, the Bankruptcy Court confirmed the Plan and issued the Order pursuant to the Plan.

As a requisite of the Plan, the Order enjoins a consolidated securities fraud class action pending in the United States District Court for the Southern District of New York in which Appellants are named plaintiffs ("Class Action"). Case No. A–532—A–592.[1] The Class Action alleges that several of Debtors' officers and directors committed securities fraud, in violation of Section 10(b) of the Securities Exchange Act of 1934, by issuing false and misleading information regarding Debtors' intentions to file Chapter 11. On June 28, 1993, after issuance of the Order, Appellants filed this appeal.

## STANDARD OF REVIEW

■ A district court acts as an appellate tribunal when reviewing a decision of the bankruptcy court. Therefore, the standard of review to be applied depends upon the nature of the issues presented on appeal. Accordingly, a district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard. *Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992); Fed.R.Bankr.P. 8013. Whereas, bankruptcy court's conclusions of law are reviewed *de novo. In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986).

## DISCUSSION

Appellants assert three primary arguments: (1) the Order and Plan violate the limited discharge set forth in Section 524(e) of the Bankruptcy Code; (2) the Order violates the due process clause of the Fourteenth Amendment of the United

States Constitution; and (3) the Plan violates Rule 23 of the Federal Rules of Civil Procedure. Moreover, Appellants allege that the Bankruptcy Court did not have a sufficient legal and factual record upon which to grant the injunction.

## I. *Section 524(e) Claim*

The Plan at issue includes several provisions which seek to release certain claims against various non-debtor individuals and entities. Under Section 12.4(a) of the Plan, any present or former officer or director is released from all claims related to actions taken as Debtors' officer or director, and all creditors and other persons are enjoined from asserting any such claim in any court or forum.

Appellants argue that the Plan violates Bankruptcy Code Section 524(e) by attempting to grant releases to non-debtor third parties. Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). In particular, Appellants maintain that the Bankruptcy Court does not have the jurisdiction to enter the releases provided for in the Plan nor the power to permanently enjoin future suits against third party non-debtors pursuant to a plan of reorganization.

■ Specifically, Appellants request that the Court should determine as a matter of law, that a bankruptcy court's confirmation of a "collusive settlement of the claims of parties who were not before the Bankruptcy Court against solvent third parties who were also not before the Bankruptcy Court" is erroneous and cite several cases in support. (D.I. 5 at 15). We decline to accept Appellants' assertion that releases of the type at issue here cannot, under any circumstance, be part of a confirmed plan of reorganization. "Such a *per*

---

1. In total, four securities fraud class action were filed and consolidated: *Freberg v. Lorenzo, et al.,* 90 Civ. 7828; *Debora v. Lorenzo, et* *al.,* 90 Civ. 7901; *Sachs v. Lorenzo,* 90 Civ. 8194; and *Lloyd Pressel Co., Inc. v. Carlzon, et al.. *

*se* rule of law is inconsistent with bankruptcy court's broad equitable powers." *Ad Hoc Committee*, C.A. No. 93–252–SLR at 14.

Likewise, in a separate appeal brought in this Court from the Bankruptcy Court's same Confirmation Order, *Ad Hoc Committee of CTA Bondholders v. Continental Airlines, Inc. et al.*, Civil Action No. 93–252–SLR (D.Del. March 16, 1994), the appellant argued that bankruptcy courts lack "jurisdiction" to confirm reorganization plans which contain provisions permanently enjoining future suits against third party non-debtors, and relied upon 11 U.S.C. § 524 in support of its position. This Court relied on *In re Specialty Equipment Companies, Inc.*, 3 F.3d 1043 (7th Cir. 1993) to conclude that appellant's jurisdictional challenge must fail.

■ Therefore, relevant to the instant case is the court's decision in *Specialty Equipment*, in which the court recognized that Section 524(e) precludes the discharge of guarantors of debt held by the bankruptcy debtor, but that Section 524(e) does not address whether a bankruptcy court can expressly discharge or otherwise affect the liability of a non-debtor.[2] 3 F.3d at 1045–47. Of significance is the following discussion in *Specialty Equipment*:

> Appellants seem to be arguing for a much broader reading of section 524(e), one that would effectively preclude a reorganization plan from granting releases to any party other than the debtor. But section 524(e) provides only that a discharge does not affect the liability of third parties. This language does not purport to limit or restrain the power of the bankruptcy court to otherwise grant a release to a third party. While a third-party release . . . releasing

a codebtor from liability, may be unwarranted in some circumstances, a per se rule disfavoring all releases in a reorganization plan would be similarly unwarranted, if not a misreading of the statute.

*Id.* at 1047.

■ A more pertinent provision of the Bankruptcy Code that is applicable here, is Section 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Several circuit courts have cited Section 105(a) as a basis for a bankruptcy court to release a non-debtor from liability to third parties. *See, e.g., MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89, 93 (2d Cir.1988); *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir. 1989). However, Section 105(a) does not give a bankruptcy court unfettered discretion to discharge a non-debtor from liability, rather, the language of Section 105(a) limits the bankruptcy court's discretion to acts necessary or appropriate to carry out the purposes of the Bankruptcy Code, which was intended to provide protection to debtors, not non-debtors. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code"). Accordingly, bankruptcy courts have permanently enjoined future lawsuits against non-debtors only where such a step was essential to confirmation of the plan. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992).

**2.** A release term in a reorganization plan that is binding only upon the parties who vote to approve the plan is referred to as "consensual," whereas a "non-consensual" release is one that binds all creditors, even those who vote against the plan. Although, the release in *Specialty Equipment* was consensual, here and in *Ad Hoc Committee*, the release was non-consensual. In *Ad Hoc Committee*, the Court found that a per se rule prohibiting non-consensual releases, without regard to the factual matters supporting approval of the release or the nature of the claims affected by the plan's release provision, is unwarranted. C.A. No. 93–252–SLR at 14–15.

■ The Court also recognizes that, as a general matter, non-consensual releases of non-debtor third parties are looked upon with disfavor. *See, e.g., In re Boston Harbor Marina Co.,* 157 B.R. 726, 730–31 (Bankr.D.Mass.1993) (finding release of non-debtor parties is permitted where there is consideration for the release and its effect is limited to creditors who accept the plan provisions containing the release). However, the Court again finds *Ad Hoc Committee* instructive on this issue. Initially, this Court in *Ad Hoc Committee,* cited to *In re UNR Industries, Inc.,* 20 F.3d 766 (7th Cir.1994) and that court's discussion of mootness of a substantially consummated plan of reorganization. In *UNR,* the court found that the reliance on the plan of reorganization was persuasive enough to conclude that a "plan of reorganization, once implemented, should be disturbed only for compelling reasons." 20 F.3d at 769. Next, the *UNR* court reviewed the record to determine whether the appellants demonstrated any "powerful reason [which] demand[ed] alteration" of the plan. *Id.* at 770. Specifically, the court found that "[w]hether one or another detail ... could have been accomplished better is precisely the sort of question that should not upset a substantially consummated plan of reorganization." *Id.* at 771.

■ Likewise, this Court finds no compelling reason to modify the Plan at issue. Appellants attack Section 12.4(b)(ii) of the Plan as an "unjust provision" resulting from an "unfair deal" among Debtors, the Unsecured Creditors Committee and the insurance carrier. (D.I. 5 at 6–8). However, Section 12.4(b)(ii) merely describes the Settlement approved by an Order which became final on December 1, 1992 when no party filed an appeal. Even though Debtors served Appellants' counsel with notice of the hearing on the December 1992 Settlement, Appellants did not object to it nor did they appeal the Settlement Order.

On the other hand, the release of liability for Debtors' officers and directors was a key element of Debtors' ultimate reorganization. Pursuant to its bylaws, Debtor was legally obligated to indemnify to the fullest extent permitted by Delaware law, its directors and officers for any judgments against them in connection with lawsuits challenging actions taken by them in their official capacity and to advance litigation expenses to its officers and directors for their defense of these actions. Because of this entitlement to indemnification, a judgment against such persons would give rise to claims for indemnification and would cause diminution of funds available for distribution to all creditors of Debtors.[3] In addition, continuing litigation against these related third parties would heavily burden the new corporation. Undoubtedly, the extensive discovery that would be part of any director and officer litigation would involve the new corporation and its management who should be free to concentrate on the business. Finally, because Debtors maintained officers' and directors' liability insurance which may be available to pay judgments against the officers and directors, related proceedings against them on indemnified matters would affect property of the estate within the definition of Section 541(a)(1). *See MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 92 (2d Cir.1988) (concluding that Bankruptcy Court had jurisdiction over insurance policies as property of debtor's estate).

In light of the above circumstances, the Court concludes that permanently enjoining future lawsuits against non-debtors was essential to the confirmation of the Plan and to disturb the Plan at this time would impede the reorganization. Consequently, the Court finds no compelling reason to modify the Plan and Appellants' argument that Section 524(e) prohibits such discharge must fail.

**3.** Furthermore, pursuant to orders previously entered by the Court, Debtors have assumed the obligation to indemnify certain present and former officers, and have entered into post-petition employment and indemnification agreements with certain other officers.

 

## II. *Fourteenth Amendment Claim*

■ Next, Appellants assert that the Order amounts to a taking without due process of law in violation of the Fourteenth Amendment of the United States Constitution. Appellants allege that because of the Bankruptcy Court's actions, most members of the Class Action were unaware of the claims against the third parties, and they unknowingly and involuntarily released these claims. Accordingly, some members of the Class Action sold their Debtors' stock prior to the Bankruptcy filing because they were uninformed.

In support of their claim, Appellants contend that Section 12.4(b)(ii) of the Plan extinguishes valuable rights without any notice or consideration. However, the Court finds that Section 12.4(b)(ii) of the Plan merely describes the Settlement approved by an Order which became final on December 1, 1992 to which no party filed an appeal. Section 12.4(b)(ii) only supplies the details of the Settlement which were contemplated by the December 1 Order. Furthermore, Appellants' attorneys had notice of the December, 1992 hearing approving the $5.0 million Settlement and of the Plan confirmation hearing. Indeed, Appellants objected to the Plan and to the Order approving the Plan, and were given an adequate opportunity to be heard. Therefore, the Court concludes that Appellants were given adequate notice of the Plan and sufficient time to respond, before it was adopted and consequently, Appellants were not denied due process.

## III. *FRCP 23 Claim*

■ Lastly, Appellants contend that Section 12.4(b)(ii) of the Plan purports to settle the Class Action without providing notice to the potential class members nor providing members with the right to opt out of the settlement in violation of FRCP 23. Rule 23 requires that the Court before whom a putative class action is pending must approve the fairness of any settlement before the action may be dismissed.

The Court concludes that Section 12.4 of the Plan is not a settlement, rather, it is a release and an injunction. Prior to the execution of the Plan, the Settlement was approved by an Order dated December 1, 1992, which was never appealed. The release and injunction do not propose to settle the Class Action, and thus, are not governed by Rule 23 of the Federal Rules of Civil Procedure.

In sum, the Court concludes that the Bankruptcy Court did not err in confirming the Plan and granting a permanent injunction enjoining the Class Action against Debtors' former and present officers and directors. Therefore, the Court will affirm the Bankruptcy Court's Order.

### CONCLUSION

For the reasons discussed, the Court will dismiss Appellants' Appeal Of The Order Confirming The Debtors' Revised Second Amended Joint Plan Of Reorganization.

An appropriate Order will be entered.

