In re James F. SOWELL and Patricia C. Sowell, Debtors.

PIERSON SUPPLY COMPANY, INC., Plaintiff,

v.

James F. SOWELL and Patricia C. Sowell, Defendants.

Bankruptcy No. 86–1052–BKC–6P7.
Adv. No. 86–176.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Nov. 1, 1988.

Sarah H. White, Daytona Beach, Fla., for plaintiff.

Michael S. May, DeLand, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint objecting to de-fendants' discharge pursuant to 11 U.S.C. § 727(a)(3) and (4). The complaint alleges that the defendants purposely failed to pre-serve books, records, documents and other papers from which their financial condition could be ascertained, and secondly, that the defendants transferred, removed, de-stroyed, or concealed property of the estate with the intention of hindering, delaying and defrauding creditors.

A trial of this adversary proceeding was held August 4, 1988, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The defendants at time of filing were engaged in a single-family farming opera-tion. The gross profits derived from the operation of this business exceeded $300,-000 in each of the years 1984, 1985, and 1986. Seventy-five to eighty-five percent of these proceeds were generated from the sale of fern to regular customers along a specified truck route, while the remaining fifteen to twenty-five percent of proceeds were derived from the shipment of fern to out-of-town buyers.

2. On May 27, 1986, the defendants filed a petition for relief under Chapter 7 of the Bankruptcy Code. As part of the bank-ruptcy process, debtors are required to "schedule" or list all cash on hand and money in bank accounts. The defendants in this instance reported $23 cash on hand for Mr. Sowell, $18 for Mrs. Sowell, and $25 in a joint bank account at Barnett Bank.

The bankruptcy schedules also ask the debtors to list all liquidated debts owing to them. The defendants represented that there were none. On June 2, 1987, how-ever, this portion of the schedules was amended to add four parties owing debts of $1,116.25.

3. On July 18, 1986, a meeting of credi-tors pursuant to 11 U.S.C. § 341 was con-ducted. At that meeting, Mr. Sowell stated that he had ceased doing business under the name J.F. Sowell and was now conduct-ing business under the trade name M & K

Greens. He further stated that he no longer received any income from the former business. However, defendant, James F. Sowell, admitted that he had continued to receive payment on J.F. Sowell's accounts receivable after the name change had been effectuated.

4. On December 8, 1986, the Court entered an order requiring the defendants to produce a customer list for J.F. Sowell for 1985 and 1986. The list of 42 names prepared by the defendants does not include 12 regular customers on the truck route and 18 regular shipping customers. The omitted names include several of the Sowell's largest customers, including Nix's, Tommy's, Rosedale, Rainbow Growers, Fairmont Wholesale, and Charleston Florist.

5. In September of 1985, the defendants completed a personal financial statement listing accounts receivable of $26,014.30 owing for a 30 to 60 day period as opposed to $1,116.25 in accounts receivable on July 18, 1986. The defendants' only explanation for the $24,898.05 difference in accounts receivable between September, 1985, and the petition date was that greater effort had been made to collect the accounts. However, the bank records for the earlier time period contradict defendants' testimony and reflect greater amounts being deposited than for the same period in 1986.

6. At the trial, the defendants produced the weekly "route books" of J.F. Sowell for January through May 19, 1986, and M & K Greens for May 26, 1986, through December, 1986. The books are numbered sequentially 1 through 50 but do not include the books numbered 6, 12 and 18. The missing books correspond to the weeks prior to and including Valentine's Day, Easter and Mother's Day. The defendants testified at trial that these three holidays are the most profitable weeks for the sale of fern.

Testimony reveals that the books contained the only accurate records of the weekly sales of fern to customers on the truck route and the amounts paid or carried as an account receivable during this crucial time period. Mr. Sowell then stated that the books had been inadvertently destroyed through no fault of his own.

7. To estimate the amount of accounts receivable for the truck route at the date of the petition requires a comparison of the bank deposit slips and the route books for the truck route. The missing route books make it difficult, if not impossible, to determine the exact amount of sales for the busiest weeks of the year. However, the defendants' certified public accountant, James Dreggers, testified that he spent several weeks reviewing the documents and was able to conclude that the value of the accounts receivable due and owing at the time of the petition exceeded $8,000. These accounts receivable were not listed in either the initial schedules or the amendments.

8. Not only did the debtors understate the true value of their accounts receivables, they also failed to adequately explain the flow of funds in and out of various bank accounts. For instance, the records of Vista Bank reflect that the defendants made deposits to their bank account totaling $6,637.08 immediately prior to the petition date and an additional $27,954.25 shortly thereafter. When asked about these funds, the defendants could not satisfactorily explain the whereabouts of the $6,637.08 or the source of the $27,954.25.

## CONCLUSIONS OF LAW

1. The granting or denial of a discharge in bankruptcy is governed by 11 U.S.C. § 727 which provides that an individual debtor is entitled to a discharge unless the debtor has engaged in certain fraudulent or improper acts.

Sections 727(a)(3) and (4) provide in relevant part:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless

such act or failed to act was justified under all the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

The purpose of the bankruptcy discharge is to give the honest debtor a fresh start in life. In exchange for that privilege, the bankruptcy laws require that the debtors accurately and truthfully present themselves before the Court. *Matter of Garman*, 643 F.2d 1252 (7th Cir.1980). Where, as here, the debtors have repeatedly tried to hinder, delay, and defraud creditors through non-disclosure or concealment of their assets, the privilege of the "fresh start" should be denied.

■ 2. Ordinarily, the failure to disclose assets of insignificant value will not support a denial of a debtor's discharge. *Matter of Galbraith*, 17 B.R. 302, 305 (Bkrptcy.M.D.Fla.1982). Where, however, the debtor has failed to schedule assets of significant value, the presumption is that the assets were omitted purposely with fraudulent intent. *In re Topping*, 84 B.R. 840, 842 (Bkrptcy.M.D.Fla.1988); *In re Collins*, 19 B.R. 874 (Bkrptcy.M.D.Fla.1982).

■ In the present case, the defendants have failed to disclose nearly $8,000 in accounts receivables, $6,637.08 on deposit with Vista Bank, and the source of nearly $27,000 deposited to that same account shortly after the petition had been filed. Given the nature of these omissions, the size of the bankruptcy estate, and the unsatisfactory explanations offered at trial, the Court concludes that these assets were intentionally left off the bankruptcy schedules. Under § 727(a)(3), the discharge of the defendants should be denied.

3. A separate allegation in this adversary proceeding is that the defendants failed to maintain adequate business records. Although a full accounting of every business transaction is not required, there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy. *See e.g., In re Goff,* 495 F.2d 199, 201 (5th Cir.1974).

■ The defendants suggest that, as farmers, they should be given special consideration in regard to their record keeping practices. The Court does not agree. While a farmer or wage earner dealing primarily in cash ought not routinely be denied a discharge for failure to keep accurate records, a higher standard is imposed upon debtors actively engaged in credit transactions. Where, as here, the credit sales of the debtors make up a substantial portion of the gross profits, there should be a more accurate set of business records.

■ In the present case, the only business records which the defendants have produced are the deposit slips relating to the Barnett Bank business account and the weekly sales invoices associated with the "truck route." There are no records regarding credit sales or shipments made to out-of-town customers. Furthermore, an examination of the deposit slips shows that only the amount deposited in the defendants' business account is accounted for, not the actual amount paid in cash or charged as a credit during these three weeks. These records are far from accurate and the destruction of the three route books for the weeks surrounding Valentine's Day, Easter and Mother's Day has made it almost impossible to reconstruct the actual sales which occurred during the most productive weeks of the year. Under § 727(a)(3), this is sufficient cause for denying the defendants' discharge.

■ 4. In addition to the above factors, the Court finds that the defendants have, on more than one occasion, made a false oath or account in connection with their case. For instance, the defendants failed to comply with the order directing them to produce a list of their customers by turning over only a partial list. On another occasion, July 18, 1986, they gave false testimony under oath regarding the source and location of cash assets. This is not to mention the fact that the defendants supplied misleading information in their bankruptcy schedules which, in and of itself,

will support a finding of false oath or account in connection with this case.

5. It is evident that throughout this case the defendants have not cooperated with creditors. They have failed to adequately disclose their assets, they have concealed important information, and they have destroyed vital information necessary to a proper creditor investigation. The defendants have also failed to obey the lawful orders of this Court by disregarding orders such as the one entered December 8, 1986, directing them to produce certain documents. This is not the type of conduct which the Court will sanction. Accordingly, the Court will, upon separate order, deny the defendants' discharge pursuant to 11 U.S.C. § 727(a)(3) and (4).