**In re Mohammed Owais KHANANI, Debtor.**

**Leigh R. Meininger, Trustee, Plaintiff,**

**v.**

**Mohammed Owais Khanani, Defendant.**

**Bankruptcy No. 6:04–BK–07648–ABB.**
**Adversary No. 6:04–ap–00212–ABB.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 27, 2005.

Peter N. Hill, Wolff Hill McFarlin and Herron PA, Orlando, FL, for Debtor.

David M. Landis, Lead Attorney, Mateer & Harbert, P.A., Orlando, FL, for Plaintiff.

1. Doc. No. 1.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This case came before the Court on the Complaint[1] filed by Plaintiff Leigh R. Meininger, the Chapter 7 Trustee and Plaintiff ("Plaintiff" or "Trustee"), against Mohammed Owais Khanani, the Defendant and Debtor ("Debtor" or "Khanani"). This is an action to determine whether the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727. A trial was held on April 20, 2005. Appearing at trial were the Plaintiff, counsel for the Plaintiff, the Debtor, and counsel for the Debtor. After reviewing the pleadings and evidence, and hearing live testimony and argument of the parties, the Court finds that the Plaintiff has established that the Debtor should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4)(A), and judgment will be entered for the Plaintiff.

The following Findings of Fact and Conclusions of Law are made:

## FINDINGS OF FACT

### Background Facts and Events

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 2, 2004 ("Petition Date"). The Plaintiff is the Chapter 7 Trustee. The Debtor filed a previous individual bankruptcy case under Chapter 13 with this Court on April 1, 2003, captioned *In re Mohammed Owais Khanani*, Case No. 6:03–bk–03536–ABB ("Chapter 13 Case"). The case was converted to Chapter 11 and dismissed on October 20, 2003, with a 180–day filing prohibition imposed by the Court. The Debtor has also been involved in at least one bankruptcy case filed by a company owned, or partially owned, by the Debtor.[2]

2. Doc. No. 24 (Transcript of 2/17/2004 deposition), p. 14.

The Trustee filed his Complaint in this case alleging that the Debtor's discharge should be denied: (i) pursuant to 11 U.S.C. § 727(a)(3), for failing to keep or preserve sufficient recorded information from which the Debtor's financial condition or business transactions might be ascertained; and (ii) pursuant to 11 U.S.C. § 727(a)(4)(A), for knowingly and fraudulently making false oaths in his Schedules and Statement of Financial Affairs.

The Debtor has two siblings, a sister named Hunaina Khanani, a/k/a Hunaina Sattar, and a brother named M. Hani Khanani. The Debtor's father is M. Saleem Khanani and his mother is Hurshi Khanani. The Debtor's father is the family patriarch. He is a businessman and has been actively involved in the Debtor's financial affairs. The Debtor is married to Faiza Khanani.

The Debtor attended college for two and a half years and withdrew to start an apparel business based in Orlando, Florida. He achieved great success with this business when the brand label came to be recognized in the resort market. The Debtor later sold the business to his two business partners. The Debtor became interested in the stock market and started his own trading business in late 1997 or early 1998, which, according to the Debtor, in less than three years was worth over $1,000,000. The trading business had hundreds of customers with nine offices nationwide, with a local office in the Sun-Trust Bank building in Orlando, Florida, which closed in the first quarter of 2002 after suffering declining revenues and rising overhead expenses.

Khanani has owned and been involved in a multitude of businesses since his first business venture in his teens. He described at length the number of businesses he has owned over the years and his high level of business acumen and experience. In Question No. 18 of his Statement of Financial Affairs the Debtor lists 20 different business entities he was involved in within six years of the Petition Date.[3]

### Examinations and Requests for Information from the Debtor

The Debtor was deposed twice pre-petition in connection with a judgment obtained against him by Coneca Inc. The first deposition took place on February 17, 2004 at which the Debtor was asked about a parcel of real property located in Byram Township, Sussex County, New Jersey (the "Property"). The Debtor testified that he did not own or have an interest in any real property. However, later in the deposition the Debtor admitted he might have an interest in the Property.[4]

The Debtor filed his Schedules and Statement of Financial Affairs in this case on July 21, 2004. The Debtor declares he had not transferred any interest in any property within one year prior to the Petition Date[5] and "none" for interests in real property in Schedule A.[6] The Plaintiff asked the Debtor whether he had sold, given away or transferred anything during the year before filing the bankruptcy case at the August 5, 2004 § 341 meeting of creditors and the Debtor responded in the negative.

The Trustee served a Subpoena Duces Tecum[7] on Khanani requiring him to ap-

---

3. Doc. No. 17, in the main case.

4. The deposition was continued to May 5, 2004 (transcript is at Doc. No. 25) and the Debtor testified that he no longer had an ownership interest in the Property, but he gave no details as to what had happened to his interest in the Property.

5. Plaintiff's Exh. No. 3 at Question No. 10.

6. Plaintiff's Exh. No. 2.

7. Doc. No. 22 in the main case.

pear at a Rule 2004 examination on August 18, 2004 and to produce documents including personal and business bank account statements, credit card statements, deeds to property, real property transfer documents, executory contracts, and tax returns. The items requested and the time period covered by the Subpoena were reasonable and the items were important to the Trustee's investigation of this case. The Debtor produced only one bank statement for an account at Amsouth Bank and credit card and bank account numbers, but no other bank records or credit card statements at the Rule 2004 examination on September 28, 2004. Khanani indicated he made no effort to obtain credit card or bank account records because he could not pay the costs of obtaining the records.

The Debtor produced a Deed dated May 21, 1988 and recorded July 27, 1988 in the public records of Sussex County, New Jersey and an Affidavit of Consideration or Exemption or Partial Exemption, pursuant to which he and his two siblings obtained title to the Property.[8] The Property was a gift to him and his siblings from his parents and the Property was no longer under his name.[9] The Debtor claimed he did not know whether he had signed any documents transferring the Property out of his name. He had made no investigation of the transfer.[10]

The Plaintiff tried to obtain basic income and expense information from the Debtor at the examination. The Debtor's Schedule I states $0.00 in monthly income, but

Schedule J reflects household expenditures of $4,770.00. The Debtor testified that neither he nor his wife are working and that his father gives money to his wife each month. He did not explain where the money comes from, the form of payment, what account the money goes into, or how the money is used. Khanani refused to answer questions regarding his father's and wife's financial affairs. He would not provide specific addresses for his brother and sister and would not discuss their employment status.

Khanani admitted that his Schedules were inaccurate because certain commercial and residential leases were not disclosed as executory contracts. He failed to disclose in his Schedules his interest in a Commercial Lease Agreement dated July 15, 1994 for a property known as the Visitors Plaza Shopping Center, which names him as a tenant.[11] Premier Restaurant, Inc. ("Premier") operates a Western Sizzler Restaurant in the Visitors Plaza space and for a period of time the Debtor had been receiving a draw from Premier.[12] The Debtor failed to disclose any information in his original Chapter 7 Schedules regarding this commercial lease, a connection to Premier,[13] or the residential lease for his address of record.[14]

The Debtor amended his Schedules months after the Rule 2004 examination concluded disclosing his interest in the Visitors' Plaza commercial lease, the residential lease for his home, and the $2,100.00 residential security deposit held by his

---

**8.** Plaintiff's Exh. No. 10.

**9.** Doc. No. 26, p. 9.

**10.** *Id.;* p. 8, ln. 25, pp. 9–10 and p. 11, ln. 1–6.

**11.** Plaintiff's Exh. No. 9.

**12.** Doc. No. 24, pp. 6–7.

**13.** It is noteworthy that the Debtor disclosed in Schedules B and G in the Chapter 13 Case his interest in the Visitors' Plaza commercial lease, with a description of the lease having a ten-year term beginning on July 15, 1994 and the existence of a security deposit of $48,000. The Debtor also disclosed in Schedule B in the Chapter 13 Case that he owned 10% of the stock in Premier valued at $150,000.00.

**14.** Plaintiff's Exhibit No. 8.

landlords. The Western Sizzler Steakhouse continued to operate until several days prior to the trial, but none of the amendments address the Debtor's involvement with or connection to the business operating at the Visitors' Plaza property.

Three months after the Rule 2004 examination counsel for the Debtor forwarded a copy of a Bargain and Sale Deed dated May 4, 2004 ("Sale Deed") to counsel for the Trustee.[15] The Debtor signed the Sale Deed on May 9, 2004 and it was recorded in the land records for Sussex County on June 8, 2004. The Sale Deed transferred the Property from the Debtor and his siblings to an entity named "198001191977 Byram Township Land Trust" ("Transferee") for $1.00. The Transferee's address in the Sale Deed is 7512 Dr. Phillips Blvd., Suite 50 PMB 288, Orlando, FL 32819. This address is a rented mailbox in a UPS Store. The customer who had rights and access to the mailbox on the date of execution of the Sale Deed is an entity known as 7051 Trading, LLC ("LLC") and Hunaina Sattar, the Debtor's sister.

On February 18, 2005, the Debtor filed an amendment to his Statement of Financial Affairs:

"Question 10 should reflect that on May 4, 2004 the Debtor transferred his interest in property known as Byram Township, Block No. 76, Lot No. 71–96, Sussex County, New Jersey to 198001191977 Byram Township Land Trust, 7512 Dr. Phillips Blvd., Suite 50 PMB 288, Orlando, FL 32819 for $1.00. The transferee is of no relation to the Debtor."[16]

When questioned at trial as to the truthfulness of the representation in this amendment that the Transferee of the Property "is of no relation to the Debtor," the Debtor's sole response was "I don't know who the trust beneficiaries are."[17] Khanani knew he was not a settlor or beneficiary of the trust, but he had never seen a copy of the trust documents.[18] He conducted no investigation into the transfer of the Property whatsoever and had never seen the Property, but claimed it had little or no value. He produced no documentation to substantiate his testimony.[19]

## CONCLUSIONS

■ The Bankruptcy Code imposes certain obligations upon those who seek bankruptcy protection. A fundamental obligation is that a debtor be forthright with the Court, the creditors, and the trustee. Fulfilling this obligation should not be difficult for a debtor. The Debtor has failed to fulfill this most basic and important obligation. He has not been forthright with the Court, his creditors, or the Trustee.

Khanani repeatedly failed and, in many instances refused, to provide relevant, important information to the Trustee. He failed to provide, among other things, bank statements, credit card statements, tax returns, and W–2s. He never responded in any meaningful or adequate way to the August 2004 Subpoena, nor made any effort to obtain and produce his records.

Khanani refused to answer basic, relevant financial questions relating to his siblings, his wife, his father, and how his household expenses are handled. He would not cooperate with the Trustee and provide information regarding his sister because he did not want his sister to be subjected to an investigation.

---

15. Plaintiff's Exh No. 12.

16. Plaintiff's Exh. No. 7.

17. Trial transcript, p. 16, ln. 15–20.

18. *Id.*

19. Trial transcript, p. 43, ln. 18–25, p. 44, ln. 1–23, p. 50, ln. 9–25, and p. 51, ln. 1.

The Debtor gave various excuses as to why he could not comply with the Trustee's requests for information. One excuse was that there was a cost involved in obtaining his bank and credit account statements and he could not afford to pay the cost. Another excuse involved an unidentified former assistant and a commercial landlord. Khanani testified that in the past he had a full-time personal assistant who maintained his books and records and paid his bills. He explained that his records were kept by his personal assistant in the corporate offices for his business in the SunTrust Bank building from which his business was ultimately evicted. He further testified that all of his records were left in a storage room in the SunTrust Bank building and he was unable to get into the building and retrieve them.

These excuses are neither effective to negate the Debtor's obligation to produce information nor credible. If there was a cost involved in obtaining account statements, the Debtor needed to bear any reasonable cost and obtain the statements. The Debtor's testimony regarding his records being lost to a landlord is not credible. The Debtor sets forth in his Statement of Financial Affairs at Question No. 19 that he maintains his books, records, and financial statements and they are kept at his address of record of 7906 Bayflower Way, Orlando, Florida 32836.[20] The Debtor makes no mention in his Statement of Financial Affairs that his records are anywhere but in his own possession. Likewise, there is no mention in the Statement of Financial Affairs that any records were lost, seized, or transferred. The Debtor is a sophisticated, knowledgeable businessman who knows the importance of maintaining adequate and accurate records. Khanani was obstreperous throughout this case and failed to adequately produce his records to the Trustee.

The Debtor failed to make truthful disclosures and withheld material information from the Trustee. He was aware of his interest in the Property as early as February 2004 and had an obligation to investigate the Property and his interest in it. Between the February 2004 deposition date and the Petition Date, Khanani had ample time to investigate the Property in order to make full and accurate required disclosures. However, he failed to disclose any information relating to the Property in his Schedules or Statement of Financial Affairs. The Debtor executed the Sale Deed on May 9, 2004, transferring his and his siblings' interest in the Property to a trust. Even if the Debtor's father had presented the Sale Deed to the Debtor and pressed him to sign it, he would have recalled signing the document and understood its import. On the Petition Date the Debtor knew he had transferred his interest in the Property and he knowingly failed to disclose such transfer in his Statement of Financial Affairs.

As the case progressed the Debtor continued to conceal material information and made false oaths concerning the Property. The Debtor testified at his § 341 meeting that he had not sold, given away or transferred anything during the year before filing the bankruptcy case. This testimony was false. The Debtor failed to disclose the details of the transfer of the Property at the Trustee's 2004 examination in September 2004. Khanani testified that he did not know whether he had signed any documents transferring the Property out of his name and had made no investigation of the transfer. This testimony was false.

It was not until February 18, 2005, more than a year after the Property was brought to the Debtor's attention, his Statement of Financial Affairs was amended disclosing the transfer of the Property.

---

**20.** Doc. No. 17 in the main case.

The amendment provides additional basis of the Debtor's attitude towards his duties and responsibilities. The untimely amendment contains a false material statement of fact. The Debtor asserts in the amendment that the Transferee "is of no relation to the Debtor." However, the Transferee's address of record is a commercial mailbox rented by the Debtor's sister and a LLC owned and controlled by insiders of the Debtor. The Debtor was nonplussed to hear these facts at trial. He admitted that he is familiar with the LLC and that his mother and wife are members of the LLC. The connections between the Debtor and the Transferee were required to be disclosed.

The Debtor has been uncooperative with the Trustee throughout this case. He failed to keep and preserve information relating to his personal and business affairs, concealed such information from the Trustee, and impeded the Trustee from ascertaining his financial condition and material business transactions. Khanani has not provided any plausible reason why his failures to preserve and produce the information are justified under all of the circumstances of this case.

The Debtor has made false oaths and accounts regarding material and important information. He made false oaths and accounts in his Schedules, his Statement of Financial Affairs, his amended Statement of Financial Affairs, at his § 341 meeting of creditors, and the 2004 examination. The Debtor made the false oaths and accounts knowingly and fraudulently.

### CONCLUSIONS OF LAW

#### 11 U.S.C. § 727(a)(3)

■ The Trustee alleges that the Debtor should be denied a discharge pursuant to § 727(a)(3) of the Bankruptcy Code, which provides that the Court shall grant a debtor a discharge unless:

the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11 U.S.C. § 727(a)(3). The purpose of § 727(a)(3) is to make certain that the creditors and the trustee are given sufficient information to understand the debtor's financial condition. 6 COLLIER ON BANKRUPTCY ¶ 727.03[3][a], at 727–31 (15th ed. rev.2004). To qualify as sufficient, the debtor's presented records must enable his creditors to ascertain his present financial condition and to follow his business transactions for a reasonable period of time in the past. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996).

■ The trustee objecting to discharge carries the initial burden to show reasonable grounds to believe that the books or records are inadequate. *In re Milam*, 172 B.R. 371, 375 (Bankr.M.D.Fla. 1994); Fed. R. Bank. Pro. 4005. The trustee must show by a preponderance of the evidence that a debtor is not entitled to a discharge. *In re Scott*, 172 F.3d 959, 966–7 (7th Cir.1999). Section 727(a)(3) does not require a full accounting of every business transaction, but "there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy." *In re Sowell*, 92 B.R. 944, 947 (Bankr.M.D.Fla.1988). Each case must be determined on its own facts. *Milam*, 172 B.R. at 375. The standard applied to a debtor who is involved in business may be more stringent than the standard imposed on a debtor who is an unsophisticated wage earner. *Id.; Merid-*

*ian Bank v. Alten,* 958 F.2d 1226, 1231 (3d Cir.1992).

■■■ Once the objecting party makes an initial showing that a debtor failed to maintain or preserve adequate records from which his financial condition or business transactions could be ascertained, the burden then shifts to the debtor "to explain satisfactorily the loss." *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984); 6 COLLIER ON BANKRUPTCY ¶ 727.03[4], at 727–37. The debtor carries the burden of persuasion to explain the failure to keep records because the information necessary to establish such an excuse is generally in the possession of the debtor. *Meridian Bank v. Alten,* 958 F.2d at 1233. A debtor must explain his or her losses or deficiencies of documentation in such a manner to convince the Court of good faith and businesslike conduct. *Id.* "The plain language of section 727(a)(3) places the burden on the debtor to justify the lack of adequate record keeping." *Id.* at 1234.

■■■ Khanani was to produce his books and records to the Trustee pursuant to the Subpoena. The Subpoena delineated 20 different items relating to the Debtor's personal and business records, including bank and credit card statements, tax returns, W–2s, deeds, and property transfer documents. Khanani produced only one bank statement, some account numbers, but no other records, and he made no effort to keep, preserve, or locate his business and personal records. He repeatedly failed to produce information relating to the Property, even though the Trustee made many requests for such information. He refused to answer basic questions regarding his financial transactions and matters relating to insiders. The Debtor concealed from the Trustee important information relating to his financial standing and business dealings.

The Trustee has established that Khanani failed to keep and preserve his personal and business records, and concealed relevant information. The Debtor's failures to produce records and financial information have prevented the Trustee and the creditors from ascertaining the Debtor's financial condition and understanding his business transactions. The Trustee has carried his burden pursuant to § 727(a)(3).

■■■ The Debtor did not produce his bank and credit account statements because the cost to obtain the records was too great. This explanation is unsatisfactory. The Debtor had a duty to obtain the records and he failed to carry out this duty. Khanani could not produce his personal and business records because they had been kept by a former secretary in the SunTrust building and were lost to the landlord during an eviction. This explanation is unsatisfactory. First, this testimony is contradictory to the Debtor's Statement of Financial Affairs stating that the Debtor is in possession of the records. Second, the Debtor made no attempt to preserve or retrieve these records. He presented no evidence he made any effort to communicate with the former landlord, to communicate with his former assistant, or to find the records. It was the duty of the Debtor to provide the Trustee with adequate business and personal financial information and he failed to fulfill that duty. The Debtor's explanations as to why he did not produce the records to the Trustee are unsatisfactory.

■■■ Because the Debtor is an experienced businessman he is held to a higher standard of care in his record keeping. With his extensive dealings in the arena of finance and investment businesses, the Debtor knew the importance of keeping accurate, complete records. He is no stranger to bankruptcy procedure and the disclosure requirements through his previous Chapter 13 case and involvement in at least one corporate bankruptcy case.

Based on the circumstances of this case, the Debtor's failure to retain, protect, and produce his personal and business financial records was not justified. Therefore, the Debtor's discharge is due to be denied pursuant to 11 U.S.C. § 727(a)(3).

### 11 U.S.C. § 727(a)(4)(A)

 The Trustee also seeks denial of the Debtor's discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code, which provides that the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The party objecting to the debtor's discharge in a § 727(a)(4)(A) action carries the burden of proof and must show by a preponderance of the evidence that a debtor is not entitled to a discharge. Fed. R. Bankr.Pro. 4005; *In re Scott*, 172 F.3d at 966–7. In a § 727(a)(4)(A) discharge objection proceeding, the objecting party must show that the debtor made the false oath knowingly and fraudulently. *In re Chalik*, 748 F.2d at 619. The requisite intent may be established by the objecting party through inference from the facts. 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][b], at 727–40.

 The Eleventh Circuit has held a discharge should be denied where the omission from the Schedules or Statement of Financial Affairs is both fraudulent and material. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir.1991). The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." *In re Chalik*, 748 F.2d at 618. It is irrelevant that a debtor does not intend to injure his creditors when he makes a false statement. *Id.* "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects." *In re Sofro*, 110 B.R. 989, 991 (Bankr.S.D.Fla. 1990). It is not the job of the debtor to determine which of the questions are relevant or material. *Haught v. U.S.*, 242 B.R. 522, 526–7 (M.D.Fla.1999).

### The Sussex County Property

 The Debtor admits the statement in his Statement of Financial Affairs that he had not transferred any property was false because he executed the Sale Deed prior to the Petition Date. The Debtor asserts that the error was inadvertent and not knowing or fraudulent. Because "it is always difficult to prove that a false oath was intentionally made, an inference of such intent can be drawn from the circumstance surrounding the debtor." *Haught v. U.S.*, 242 B.R. at 525 (citing *In re Vincent*, 159 B.R. 595, 597 (Bankr.M.D.Fla. 1993)).

 Khanani had the requisite fraudulent intent pursuant to 11 U.S.C. § 727(a)(4)(A) when he filed his original Statement of Financial Affairs with the false statement in Question 10 based upon the circumstances surrounding the Debtor. Fraudulent intent can be drawn from the following circumstances: (i) The Debtor was questioned at length on the Property at two pre-petition depositions, the first in February 2004 and the second in May 2004, conducted by a judgment creditor. (ii) The Debtor had ample time after the first deposition to investigate the Property and understand what interest he had in the Property. (iii) Days after the second deposition concluded, the Debtor executed the Sale Deed on May 9, 2004. (iv) The Sale Deed was recorded less than twenty-five days before the Petition Date. (v) The Debtor is a sophisticated businessman,

with previous experience in bankruptcy, who understands the import and effect of executing the Sale Deed. (vi) Khanani gave false testimony at the § 341 meeting concerning the Property and its transfer and repeatedly failed to produce documents regarding the Property. (vii) He produced only a copy of the Deed, but failed to produce a copy of the Sale Deed, at the Rule 2004 examination in September 2004, and did not produce the Sale Deed until February 2005. Taking all of these facts and circumstances together, the Debtor knowingly and fraudulently made a false statement in his Statement of Financial Affairs when he failed to disclose the transfer of the Property.

The Debtor made another false statement when he filed his Amendment to the Statement of Financial Affairs on February 18, 2005 stating that the Transferee of the Property "is of no relation to the debtor." The false statement was intentional as established by the surrounding circumstances: (i) There are close connections between the Transferee and the Debtor. The address for the Transferee on the Sale Deed is a private mailbox at a UPS Store controlled by the LLC and the Debtor's sister. (ii) The LLC is owned and managed by the Debtor's mother and wife. (iii) The Debtor testified that he was not surprised the address for the Transferee is a mailbox rented by his sister and the LLC in which his wife and mother are involved.

 "Badges of fraud" are factors strongly indicating the existence of fraudulent intent. *In re Ingersoll*, 124 B.R. 116, 121–2 (M.D.Fla.1991). Common badges of fraud include: (1) the lack or inadequacy of consideration for the property transferred; (2) the existence of a family, friendship or other close relationship between the transferor and the transferee; (3) the transferor's retention of the possession, control, benefits or use of the property in question; (4) the financial condition of the transferor both before and after the transfer took place, i.e. whether the transfer resulted in insolvency; (5) the cumulative effect of these transactions and course of conduct after the onset of financial difficulties or dependency or threat of suit by creditors; and (6) the general chronology and timing of the transfer in question. *Id.*

The presence of several of these "badges" leads to the conclusion that a debtor possessed the necessary fraudulent intent to support a denial of discharge pursuant to § 727(a)(4)(A). *Id.* at 124. The presence of only one of these factors has been held to justify a finding of actual fraudulent intent. *Id.*

The facts establishing the Debtor's fraudulent intent include: (i) The Sale Deed states the consideration for the transfer to be $1.00. Such consideration is patently inadequate. (ii) The Transferee's address is a private mailbox rented by the Debtor's sister and the LLC, which is controlled and owned by the Debtor's wife and mother. (iii) The transfer of the Property was effectuated five days after the deposition at which the Debtor testified he no longer owned an interest in the Property. (iv) The transfer was recorded less than twenty-five days before the Petition Date. At least three of the badges of fraud are present.

The Property transfer information omitted from the original Statement of Financial Affairs relates to the Debtor's business transactions, his financial dealings, the discovery of assets, and the disposition of his property. The omission is fraudulent and material. The statement made by the Debtor at the § 341 meeting that he had not sold, given away or transferred anything during the year before filing the bankruptcy case was false. The statement made under oath, at the 2004 examination, that he was not certain what happened to his interest in the Property was false.

The Debtor's statement in the Amendment to the Statement of Financial Affairs that he has no connection to the Transferee is false. All of the circumstances surrounding the Debtor establish he made false statements and oaths regarding material matters knowingly and intentionally. The Debtor's discharge is due to be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

### Omissions in Schedules

■ The Debtor was less than forthcoming in his Schedules. The Debtor filed his original Schedule G stating that he had "no executory contracts or unexpired leases" and in Schedule B he had no security deposits with public utilities, telephone companies, landlords, and others. The Debtor admitted in sworn testimony that Schedule G was inaccurate because he had an interest in two executory contracts— the Visitors' Plaza lease and his residential lease.[21] He also admitted that Schedule B was inaccurate because a security deposit was being held by his residential landlord.

The Debtor was well aware of the existence of these leases before he filed his Chapter 7 petition. The existence of the leases was admitted by the Debtor at the first deposition on February 17, 2004. Khanani disclosed the existence of the Visitors' Plaza lease in his previous bankruptcy case in both Schedules G and B. While the Debtor was questioned about his interest in these leases on February 17, 2004, and then again at the 2004 examination on September 28, 2004, he did not file amendments to his Schedules until several months later on December 9, 2004.[22] The

failures to disclose his interest in the Visitors' Plaza lease and the residential lease and the existence of the residential security deposit, were material omissions by the Debtor.

A fraudulent intent can be inferred from all of these facts and circumstances. The Debtor's Chapter 7 disclosures are inconsistent with his Chapter 13 disclosures. The existence of the leases was known to the Debtor pre-petition, yet he filed inaccurate and incomplete Schedules. The Debtor made no attempt to timely and truthfully correct these known inaccuracies and omissions. The Debtor's December 9, 2004 amendments to his Schedules were untimely and do not cure his original omissions. The information omitted relates to the Debtor's business transactions, his financial dealings, the discovery of assets, and the disposition of his property. The omissions from the Schedules are fraudulent and material. The Debtor knowingly and fraudulently made false oaths pursuant to § 727(a)(4)(A) of the Bankruptcy Code.

The Debtor has crossed the line between being merely dilatory and unresponsive, but deserving of a discharge, and committing acts and omissions that call for the denial of his discharge. For the foregoing reasons, the Debtor is not entitled to a discharge and a discharge is due to be denied pursuant to 11 U.S.C. §§ 727(a)(3) and 727(a)(4)(A).

21. 2004 examination transcript at pp. 13–14.

22. There is no evidence before the Court as to whether the Debtor, on the Petition Date, continued to hold an ownership interest in Premier. If he did continue to hold an ownership interest in Premier, then he failed to make such disclosure in Schedule B. Likewise, there is no evidence before the Court as to whether the Debtor continues to hold an interest in any security deposit held by the Visitors' Plaza landlord. If on the Petition Date the Debtor held such an interest, Schedule B is inaccurate. If the Debtor transferred either his interest in Premier or the security deposit pre-petition, then his Statement of Financial Affairs should reflect such transfer. That would be the only way to address the inconsistencies between the Debtor's Chapter 13 disclosures and his Chapter 7 disclosures.

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

### JUDGMENT

The Complaint of the Plaintiff, Leigh R. Meininger, Chapter 7 Trustee ("Plaintiff"), against Mohammed Owais Khanani, the Defendant and Debtor herein ("Debtor"), to determine whether the Debtor is entitled to receive a discharge of debt, having been tried before the Court and after reviewing the pleadings, evidence, receiving testimony, exhibits, and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED** and **DECREED** that the relief sought in the Plaintiff's Complaint is **GRANTED** and **JUDGMENT** is hereby entered for the Plaintiff and against Mohammed Owais Khanani; and it is further

**ORDERED, ADJUDGED** and **DECREED** that Mohammed Owais Khanani's **DISCHARGE** is hereby **DENIED** pursuant to §§ 727(a)(3) and 727(a)(4)(A) of the Bankruptcy Code.