**In re David Relito TAN, Debtor.**

**Tranche 1 (SVP–AMC), Inc., etc., Plaintiff,**

v.

**David Relito Tan, Defendant.**

**Bankruptcy No. 00–40850 TD. Adversary No. 00–4199 AT.**

United States Bankruptcy Court, N.D. California.

Oct. 3, 2006.

Edward O. Lee, Law Offices of Edward O. Lee, Fremont, CA, Michael D. Cooper, Oak Wendel, Rosen, Black and Dean, Robert F. Kidd, Stein, Rudser, Cohen and Magid, Oakland, CA, for Debtor.

## MEMORANDUM OF DECISION AFTER TRIAL

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

In this adversary proceeding, plaintiff Tranche 1 (SVP–AMC), Inc. ("Plaintiff") seeks denial of defendant David Relito Tan's (the "Debtor") bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), and (a)(4)(A). For the reasons stated below, the Debtor's discharge will be denied on all three statutory grounds.

## DISCUSSION

### A. INTRODUCTION

#### 1. Procedural Background

In September 1998, Philippine National Bank ("Bank") obtained a judgment against Edison–Hubbard Corp. ("Edison–Hubbard") and the Debtor in the principal amount of $6,999,796 (the "Judgment") in San Francisco Superior Court. The Debtor's liability for the Judgment was based on his guaranty of a loan by the Bank to Edison–Hubbard. A few months later, the Bank took the Debtor's examination under state law. The Debtor disclosed at the examination that he held an equity interest in five corporations: i.e., Edison Global, Teledyne Marketing ("Teledyne"), Edison Mobile Hydraulics ("Edison Mobile"), Edison Industries, Inc. ("Edison Industries"), and Filipinas Electric and Meter Co. ("Filipinas")(collectively the "Disclosed Interests"). Thereafter, in 1998, the Bank obtained an order assigning to it the Disclosed Interests until such time as the Judgment was paid in full (the "Assignment Order").

In February 2000, the Debtor filed a chapter 7 bankruptcy petition in this court, commencing the above-captioned case. In his schedules of assets and liabilities (the "Schedules") and his statement of financial affairs (the "SOFA"), the Debtor disclosed the Disclosed Interests. In the SOFA, he disclosed that he was an officer or director and/or that he held at least a five percent interest in Edison Global, Edison Mobile, Edison Industries, and Filipinas (the "Disclosed Positions").

However, the Debtor failed to disclose that he also held interests in seven other corporations: i.e., Stresscrete Pole Corporation ("Stresscrete"), Greenergy Light Co. ("Greenergy"), Central Negros Power Corporation ("Central"), Advanced Insulator Corporation ("Advanced"), Ford Edsa, Inc. ("Ford Edsa"), Interelectric Systems, Inc. ("Interelectric"), and Stresscrete Negros, Inc. ("Stresscrete Negros")(collectively, the "Undisclosed Interests"). He failed to disclose that he was an officer or director of and/or held at least a five percent interest in Ford Edsa, Greenergy,

Stresscrete, Central, Advanced, and Teledyne (the "Undisclosed Positions").[1]

In May 2000, the Bank filed a complaint seeking to deny the Debtor's discharge (the "Complaint"), commencing the above-captioned adversary proceeding. The Complaint alleged three statutory grounds for denial of the Debtor's discharge. In the first claim for relief, it alleged that the Debtor had concealed property that he owned within one year of the bankruptcy filing with intent to hinder, delay, or defraud the Bank, a creditor. For that reason, it asked that the Debtor's discharge be denied under 11 U.S.C. § 727(a)(2). In the second claim for relief, the Complaint alleged that the Debtor had "concealed, destroyed, ... or failed to keep or preserve recorded information, including, books, documents, records, and papers, from which ... [his] financial condition or business transactions ... [could] be ascertained." For that reason, it asked that the Debtor's discharge be denied under 11 U.S.C. § 727(a)(3). In the third claim for relief, the Complaint alleged that the Debtor had "knowingly and fraudulently, in or in connection with ... [his] Chapter 7 case, made a false statement or account." For that reason, it asked that the Debtor's discharge be denied under 11 U.S.C. § 727(a)(4).

In 2003, the Court granted the Bank's motion for summary judgment pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A).[2] The Debtor filed a notice of appeal, and the Court's decision was reversed in part by the Bankruptcy Appellate Panel (the "BAP"). The BAP concluded that an evidentiary hearing was required with respect to the Debtor's "intent" in connection with each of the two statutory grounds upon which the Court's decision was based. Thereafter, on June 26 and July 28, 2006, the Court conducted a trial on the issue of "intent" with respect to Plaintiff's claims under 11 U.S.C. § 727(a)(2) and (a)(4)(A) and on Plaintiff's claim under 11 U.S.C. § 727(a)(3).[3] Closing argument was made by post-trial briefs.

## 2. Applicable Law

Section 727(a)(2) of the Bankruptcy Code provides, in pertinent part, that the bankruptcy court shall grant an individual debtor a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition....

Section 727(a)(3) provides that the court shall grant an individual debtor a discharge unless:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

---

**1.** After the omission of five of these corporations was discovered by the trustee, the Debtor filed amended Schedules and an amended SOFA. However, he still failed to disclose his interests in two of these corporations: i.e., Interelectric and Stresscrete Negros.

**2.** Given this decision, the Court found it unnecessary to rule on the claim under 11 U.S.C. § 727(a)(3).

**3.** Prior to trial, the Bank assigned the Judgment to Plaintiff.

Section 727(a)(4)(A) provides that the court shall grant an individual debtor a discharge unless:

> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>> (A) made a false oath or account. . . .

The plaintiff has the burden of proof on all three claims. Fed. R. Bankr.P. 4005. The standard of proof is the preponderance of the evidence. *See In re Beauchamp,* 236 B.R. 727, 730 (9th Cir. BAP 1999).

## B. SUMMARY OF CLAIMS AND PRIOR RULINGS

In its motion for summary judgment, the Bank established that the Debtor failed to disclose the Undisclosed Interests in the Schedules or the SOFA. The Bank also established that the Debtor failed to disclose in the SOFA that he was an officer or director of, or held a five percent or more interest in Advanced, Central and Teledyne. The Bank also asserted that the Debtor violated 11 U.S.C. § 727(a)(2) by valuing the Disclosed Interests as "unknown." [4]

In opposition to the motion, the Debtor did not dispute that he had failed to disclose the Undisclosed Interests and Positions. However, he claimed that he was not acting with intent to hinder, delay, or defraud the Bank. He also claimed that he was acting in good faith when he valued the Disclosed Interests as "unknown." The Court granted the Bank's motion for summary judgment on the claims under 11 U.S.C. § 727(a)(2) and (4)(A), concluding that the circumstances were sufficient to establish the Debtor's fraudulent intent as a matter of law. The BAP reversed the Court's order granting summary judgment, remanding with the direction to hold an evidentiary hearing on the issue of "intent."

With respect to the Undisclosed Interests, the Debtor claimed that two of the corporations, Central and Advanced, had never done business and that a third, Greenergy, had been inactive since 1995. The Debtor stated that, under the circumstances, he did not believe that he was required to list his interests in these corporations.

The Debtor acknowledged that a fourth corporation, Stresscrete, was doing business at the time he filed for bankruptcy. He claimed that he failed to list his interest in Stresscrete because it was very small—only one-half of one percent—and because it was only a "qualifying" share— i.e., a share required to be held to serve as an officer and director.

The Debtor also claimed that he simply forgot to list his interest in Ford Edsa. He stated that Ford Edsa was incorporated to operate a Ford dealership in Manila and was related to Edison Mobile, which sold Ford trucks and equipment. In 1997, according to the Debtor, he and Edmund Yee ("Yee"), his brother-in-law, who owned the other business, decided to separate the two businesses. Yee assumed responsibility for the automobile business, and the Debtor assumed responsibility for the truck business. The Debtor admitted that, thereafter, he remained an officer of and continued to hold a small interest in Ford Edsa. However, he claimed that his role in Ford Edsa's operations was very limited from that point on.

With respect to his failure to disclose the Undisclosed Positions, the Debtor claimed that he was suffering from "jet lag" when he filled out the bankruptcy questionnaire provided to him by his attorney, having just returned from a trip from Manila. He claimed that his valuation of

---

4. The value of one corporation was listed as zero.

the Disclosed Interests as "unknown" was reasonable. Because they represented minority interests in closely held corporations, he was unable to place a valuation on them. For practical purposes, in his view, they were unmarketable except to the other existing shareholders. He also claimed that they were unmarketable because they had been assigned to the Bank pursuant to the Assignment Order.

The BAP found some of the Debtor's explanations reasonable and others not "utterly implausible." It acknowledged that his weakest explanation concerned his failure to disclose his interest in Stresscrete. The Bank presented evidence that, four months before the bankruptcy filing, the Debtor attempted to obtain a loan for Stresscrete and submitted a business plan in connection with that attempt (the "Millenium Plan"). The Millenium Plan described Stresscrete's business and its association with several of other corporations in which the Debtor holds an interest. It described the Debtor as the "prime mover" in this group of corporations, including Stresscrete. Nevertheless, the BAP concluded that an evidentiary hearing was required to determine the Debtor's intent in failing to disclose his interest in Stresscrete, citing *In re Wills*, 243 B.R. 58, 65 (9th Cir. BAP 1999) ("[s]ummary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent").

## C. DECISION

### 1. Valuation of Disclosed Interests as "Unknown"

▮ The Bank contended that, by valuing all the Disclosed Interests in all but one of the scheduled corporations as "un-

known," the Debtor, a certified public accountant, violated 11 U.S.C. § 727(a)(2) and (4)(A).[5] It noted that, just a few months before bankruptcy, the Debtor had represented that the net worth of one of these corporations was $3,485,000. The Court does not find this argument persuasive. The Court agrees with the Debtor that it is difficult to place a value on a minority interest in a closely held corporation. To the Court's knowledge, the trustee was unable to find a buyer for any of the Debtor's interests, either the Disclosed Interests or the Undisclosed Interests.

Moreover, the failure to place a definite value on an interest that is disclosed is clearly less egregious that the failure to disclose the interest at all. Once an interest is disclosed, the trustee or a creditor may question the debtor further or search other sources of information regarding the value of the interest. If the asset is not disclosed at all, the asset will frequently escape the notice of interested parties. Similarly, placing a clearly too low value on the asset is also worse than valuing it as "unknown" since, in the absence of a "red flag" the trustee or a creditor may have no reason to investigate the value further. Valuing an interest as "unknown" invites further investigation. Consequently, the Court does not view the Debtor's valuation of the Disclosed Interests as an element in its determination of the Debtor's intent for purposes of either 11 U.S.C. § 727(a)(2) or (4)(A).

### 2. Failure to Disclose the Undisclosed Interests and Positions

The Debtor's failure to list his interests in and positions with various corporations is another matter. The purpose of the evidentiary hearing on the issue of "intent"

5. Because the Schedules and the SOFA are executed under penalty of perjury, a material misrepresentation or omission in them will generally also constitute a false oath for purposes of 11 U.S.C. § 727(a)(4)(A).

was to give the trier of fact an opportunity to assess the credibility of the Debtor. The Court has now had an opportunity to do so. Based both on his demeanor and on the substance of his testimony, the Court found the Debtor generally lacking credibility. In making this assessment, the Court takes into account the fact that the Debtor is a certified public accountant whose business is to create and manage corporations with large capital structures. At trial, the Debtor presented explanations for his behavior that required the Court to believe that he was forgetful, unbusiness-like, and careless with financial details. The Court was not persuaded.[6]

As he did in opposition to the motion for summary judgment, at trial, the Debtor offered multiple explanations for his failure disclose the Undisclosed Interests and Positions. First, the Debtor testified that he simply forgot about some of the interests and positions: (1) because some of the companies were no longer doing business and (2) because he was "jet lagged" when he filled out the Schedules and SOFA. Second, he testified that he did not believe that he still owned the interests that were subject to the Assignment Order. Third, he testified that some of the shares were "qualifying" shares which he did not consider his property. None of these explanations was credible.

The Debtor claimed that he simply forgot to list his interests in Central, Advanced, and Greenergy. He claimed that Central and Advanced had never done business and Greenergy had not operated since 1995. The Bank presented persuasive evidence that this was untrue. Evidence was presented that, in October 1999, just a few months before the bankruptcy filing, the Debtor created a business plan (the "Millennium Plan") for the purpose of securing a loan for a group of companies described as the Power One Group. Although the loan was sought primarily for Stresscrete, Advanced and Central were described as "main companies" of the group. The Debtor was identified as the President and/or Chairman of Advanced and Central and as the "prime mover" of the group.[7]

Moreover, at trial, the Debtor changed his testimony concerning Greenergy. Instead of claiming that Greenergy had not operated since 1995, he claimed that Greenergy had never operated and was simply an "paper shell." The Bank presented persuasive evidence contradicting this testimony as well. It offered into evidence Greenergy's Articles of Incorporation. These Articles showed that the Debtor held approximately 17 percent of Greenergy's paid in capital stock. It also offered into evidence Edison Global's 1997 financial statement. This financial statement showed that Edison Global had loaned $107,000 to and had invested another $100,000 in Greenergy. Third, it presented evidence that Greenergy's original corporation name was Edison Energy Corporation and that its name had been

---

**6.** Less emphasis was placed at trial on the Debtor's failure to disclose the Undisclosed Positions. Since a "position" is not an asset, its omission from bankruptcy schedules is generally less controversial. However, clearly, a debtor may not wish to disclose a position with a corporation when he does not wish to disclose his interest in it. For this reasons, the Court was and is also persuaded that the Debtor intentionally omitted the Un-

disclosed Positions with those corporations in which he held the Undisclosed Interests.

**7.** The Debtor contends that he had nothing to gain by failing to disclose the Undisclosed Interests because they had no value and did not really belong to him in any event. This contention is clearly inconsistent with the description contained in the Millenium Plan of his role in the Power One Group.

changed to Greenergy in 1998, less than two years before the bankruptcy filing.

Based on this evidence, the Court was persuaded that the Debtor was lying when he said that Greenergy had either never operated or had not operated since 1995. For the same reason, the Court was persuaded that the Debtor was lying when he said that he had simply forgotten to list his interest in Central, Advanced, and Greenergy in the Schedules and the SOFA.

The Debtor also claimed that any errors in the Schedules and the SOFA were due to "jet lag." The Bank presented evidence that also contradicted this claim. The Debtor testified at trial that he had just returned from a trip to the Philippines when he was required to provide the information for the Schedules and the SOFA. However, in his answers to interrogatories, he disclosed that he had returned from the Philippines more than three weeks before his petition was filed.

Moreover, the Bank presented evidence that the Debtor's attorney sent him the bankruptcy questionnaire and that he completed it nearly a month before he left for to the Philippines. Finally, evidence was presented that the draft bankruptcy documents were returned to him for his review well after his return. There was no evidence of any precipitating enforcement action requiring the Debtor to file suddenly.

The Debtor's explanation that he failed to list the interests covered by the Assignment Order because he did not believe they were still his property is particularly frivolous. As the Plaintiff pointed out in its closing argument brief, the interests subject to the Assignment Order were the Disclosed Interests. Even more frivolous is his argument that he should not be penalized by failing to disclose interests that the Bank used extraordinary investigation methods to discover: i.e., running a check of the record of the Philippine Securities & Exchange Commission.

Finally, the Debtor explained that he failed to disclose some or all of the Undisclosed Interests because they were "qualifying" shares. In support of this explanation, he called a witness, a Mr. Suatengco ("Suatengco"), the current president of Stresscrete. Suatengco testified that, under Philippine law, an officer in a corporation is required to hold at least one share of stock. However, the share does not entitle the officer to any dividends and the share must be relinquished to the corporation if the officer leaves his position.[8]

The Court notes that Suatengco did not testify that the Undisclosed Interests were qualifying shares. The only evidence supporting that contention was the Debtor's own testimony. The Bank introduced into evidence copies of documents filed with the Philippine government that the Debtor held substantial percentages of shares for which he had paid in capital, not just one share, in the some of the corporations in question.

Based on the foregoing, the Court finds and concludes that the Debtor acted with fraudulent intent within the meaning of 11 U.S.C. § 727(a)(2) when he omitted the Undisclosed Interests and Positions in the Schedules and the SOFA. The Court also finds and concludes that the Debtor knowingly and fraudulently made false oath within the meaning of 11 U.S.C. § 727(a)(4)(A) when he signed the Schedules and the SOFA, representing that he had disclosed all his interests and positions as required by those documents.

---

8. For purposes of this decision, the Court will assume that Suatengco's statement of Philippine law is correct. However, Suatengco is not an attorney and was not qualified as an expert witness in Philippine law.

### 3. Claim Under 11 U.S.C. § 727(a)(3)

■ As set forth above, Section 727(a)(3) provides that the court shall not grant an individual debtor a discharge if "the debtor has ... failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained unless ... [his failure to do so] was justified under all of the circumstances of the case...." 11 U.S.C. § 727(a)(3). In discovery, the Bank asked the Debtor to produce any documents that related to the various corporations in which he held an interest. The Debtor failed to produce any such documents. As a result, the Court issued an order precluding the Debtor from attempting to introduce into evidence any such documents.[9]

However, at trial, the Debtor testified that he did not keep any records with respect to any of the corporations or his interests in them. He testified that he never had any stock certificates and had no written agreements concerning his relationship to the various corporations. Based on this testimony, in its closing argument brief, Plaintiff contended that the Court should find that the Debtor failed to keep or preserve adequate documents to permit his financial condition and business transactions to be ascertained and that his discharge should be denied under 11 U.S.C. § 727(a)(3) as well as under 11 U.S.C. § 727(a)(2) and (4)(A).

Plaintiff noted that the Debtor is not an unsophisticated farmer or wage earner. He is a certified public accountant with interests and positions in numerous corporations. It asserted that a sophisticated business person is required to keep adequate documents to permit his financial

condition to be ascertained in order to receive a discharge. In support of this argument, Plaintiff cited *Meridian Bank v. Alten*, 958 F.2d 1226 (3rd Cir.1992). In *Alten*, the debtor was an attorney and real estate consultant and had been a consultant for and CEO of several enterprises. In denying the discharge or the debtor and his wife, the *Alten* court stated as follows:

> The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge.... Creditors are not required to risk having the debtor withhold or conceal assets 'under cover of a chaotic or incomplete set of books or records.'" [Citation omitted.]

*Id.*, 958 F.2d at 1230.

■ In opposition to this claim, the Debtor noted that he had produced his filed tax returns, records concerning his home purchase and mortgage, and bank statements. He contended that this was sufficient documentation of his personal financial condition and business transactions. Disputing this contention, the Plaintiff again quoted from *Alten*, as follows:

> ... [The Debtor] is not an unsophisticated wage earner. He is a knowledgeable business and professional person who knew the value of maintaining adequate records. He generated substantial revenue and traveled extensively throughout the world, and was in the international investment and real estate consulting business for many years preceding this bankruptcy. Sophisticated

---

**9.** Excepted from this order were any documents related to two corporations discovered by the Plaintiff after the case was remanded for trial. The Bank had not requested production of documents related to these two corporations since it did not know of their existence.

business persons are generally held to a high level of accountability in record keeping.

*Id.*, 958 F.2d at 1231. Plaintiff argues that this passage applies with equal force to the facts of this case. The Court agrees.

 A bankruptcy discharge is a "privilege" that is "dependent on a true presentation of the debtor's financial affairs." *In re Cox*, 904 F.2d 1399, 1401 (9th Cir.1990)*(Cox I)*. The initial burden is on the plaintiff to establish the inadequacy of the documents maintained or preserved. *In re Cox*, 41 F.3d 1294, 1296 (9th Cir. 1994)*(Cox II)*. Plaintiff has met that burden. The Debtor's contention that the documents he did provide were sufficient is unpersuasive. "[ T] he burden then shifts to the debtor to justify the inadequacy or nonexistence of the records." *Id.* The Debtor has provided no explanation to justify his failure to keep or preserve adequate documentation to permit his financial condition and business transactions to be ascertained. Therefore, the Debtor's discharge will be denied under 11 U.S.C. § 727(a)(3) as well.

### CONCLUSION

The Debtor's discharge will be denied on all three statutory bases set forth in the Complaint. Having judged the Debtor's credibility at trial, the Court concludes that the Debtor failed to disclose the Undisclosed Interests and Positions with the intent of hindering, delaying, and defrauding the bankruptcy estate and its creditors, in particular, the Bank. Thus, his discharge will be denied under 11 U.S.C. § 727(a)(2). When the Debtor signed the Schedules and the SOFA under penalty of perjury, swearing that he had answered all questions truthfully and completely and had disclosed all the information required, the Debtor knowingly and fraudulently made false oath. Thus, his

discharge will be denied under 11 U.S.C. § 727(a)(4)(A). Finally, by failing to keep or preserve any records concerning the Undisclosed Interests and Positions or for that matter concerning the Disclosed Interests and Positions, the Debtor failed to keep or preserve adequate recorded information to permit his financial condition and business transactions to be ascertained. Thus, his discharge will be denied under 11 U.S.C. § 727(a)(3).